[S. F. No. 4991.   Department Two.—June 18, 1909.]

## WILLIAM H. CRIM and ANNA D. JOOST, Appellants, v. HENRY P. UMBSEN, Respondent.

VENDOR AND PURCHASER—CONTRACT OF SALE—DESTRUCTION OF RECORDS. —TITLE NOT DEDUCIBLE OF RECORD—RESCISSION—RECOVERY OF PART PURCHASE MONEY PAID.—Under a contract of sale of land in the city and county of San Francisco, made eight days prior to the conflagration of April 18, 1906, in which most of the records were destroyed, it being thereafter impossible for the vendors within the time limited by the contract, to make a title free from defect or possible encumbrance, fairly deducible from the entire record of the county, the purchaser was thereafter entitled to rescind the contract, and to recover back part of the purchase money paid thereon previous to the fire.

ID.—PLACING CHAIN OF TITLE OF RECORD—TENDER OF DEED AND DEMAND OF PURCHASE MONEY—ACTION BY VENDOR NOT TENABLE.—The fact that the vendors recorded a deed conveying the property to them within the time limited, and one month later recorded other conveyances and certified copies, by which the title was apparently traced to a patent from the United States, and thereafter tendered a deed, and demanded the balance of the purchase money, does not establish a title, free from possible defect or encumbrance, deducible from the entire record, and does not authorize the vendors to enforce the contract of sale, or to maintain an action of damages for its breach by the purchaser.

ID.—SETTING OF ENTIRE RECORD REQUIRED.—The setting of the entire record is required to determine whether the chain of title is perfect and free from defect, and the setting having been destroyed, no title could be furnished by the vendors in accordance with the terms of the contract, which provided that if the title, within the time limited, was found incurably defective, the deposit was to be returned.

ID.—EFFECT OF PRESERVATION OF GENERAL INDEX.—The preservation of the general index of records from destruction by fire could have no other effect than to furnish the intending purchaser mere clues to recorded documents destroyed by fire, without apprising him of any substantial part of their contents.

ID.—EFFECT OF FIRE—ALL TITLES UNMERCHANTABLE UNTIL RESTORED UNDER McENERNEY ACT.—The effect of the conflagration of April 18, 1906, was to make all titles at the time unmerchantable until they were restored of record as against all persons under the provisions of the McEnerney Act, which was enacted for the purpose of removing tenable objections to titles in the city and county of San Francisco.

ID.—IMPLIED CONDITION IN EXECUTORY CONTRACT OF SALE OF LAND.—In every executory contract for the sale of land there is an implied condition that the title of the vendor is good, and that he will transfer to the vendee by his deed a title unencumbered with defects, which is marketable and fairly deducible from the record.

ID.—MOTIVES OF RESCISSION BY PURCHASER IMMATERIAL.—The motives which prompted the purchaser to rescind the contract of sale were immaterial, since it was his right under that contract to receive a perfect title of record within the time specified in the agreement, which could not be given. He was entitled to rest on the terms of the contract, whether or not his real purpose was to avoid taking and paying for a tract which had depreciated in value.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Edward C. Harrison, and Cushing, Grant & Cushing, for Appellants.

Bishop & Hoefler, and Cook & Harwood, for Respondent.

MELVIN, J.—This case furnishes one of the peculiar problems growing out of the great conflagration of April 18, 1906. On April 10th of that year plaintiffs (who are appellants

here) entered into a written contract with defendant and respondent, for the sale to the latter of a tract of land in the city and county of San Francisco, for the sum of one hundred and fifty thousand dollars, of which amount fifteen thousand dollars were paid at that time, the receipt thereof being evidenced by the contract. By the terms of this agreement thirty days were allowed the defendant for examination of the title. At the expiration of this period the balance of the purchase price was to be due and payable upon tender by appellants of a good and sufficient deed. If the title proved to be defective, thirty additional days were allowed the sellers to perfect it, and if, at the expiration of that term, the title should be incurably defective, then the deposit was to be returned. The contract also provided that if the buyer should fail to consummate the purchase in accordance with the conditions of the instrument, the deposit was to be forfeited.

At the time of the execution of the contract the vendors placed in the hands of the purchaser an abstract of title. This was destroyed in the great fire of the following week and at the same time the greater part of the records of the county recorder's office, as well as most of the other public and official records of San Francisco were burned. The general index in the county recorder's office was saved however. This showed the date and character of and the names of the parties to all instruments that had been recorded there. Prior to the ninth day of May, 1906, the time for the examination of title was extended for a further period of thirty days by written memorandum subscribed by the vendors, and on June 7, 1906, defendant gave a written notice to plaintiffs alleging that their title was defective. The specification was as follows: "That there is no record whatever showing that you, or either of you, or any other person or persons, are the owners, or have any interest in said property, or any part thereof."

It is conceded that prior to June 11, 1906, there was no record title showing that the plaintiffs, or either of them, had any ownership of, or interest in the property described in the contract. But on the last mentioned date they placed of record in the county recorder's office of San Francisco a deed, purporting to convey the title of said property to themselves from certain grantors in whom the fee would rest according to the chain of title which they afterwards established of record.

On July 6, 1906, appellants recorded certain conveyances and other instruments, some of which were originals and others certified copies. By these documents, originals of which had been of record prior to the fire, a chain of title was established, beginning with the patent issued by the government of the United States. Immediately after the recordation of these instruments plaintiffs exhibited to defendant the recorder's receipt therefor, and at the same time tendered him their deed of conveyance of the property, accompanied by a release of a certain lien of the Bank of California. Defendant refused to accept the proffered deed or to pay the balance of the purchase price, and on July 30, 1906, gave a written notice of rescission of the contract.

Thereafter this action was brought. In the complaint the facts above set forth were alleged and damages demanded in the sum of $34,915 for breach of contract. Defendant answered, denying plaintiffs' allegations of good title, and he also filed a cross-complaint setting up affirmatively a want of record title in plaintiffs, stating that his sole purpose in entering into the contract of purchase was that he might obtain a tract of land which, in the course of his business as a dealer in real estate, he might sell at a profit, either as a whole or in subdivisions, as speedily as possible; averring that for this purpose it was necessary that he should obtain a good marketable title, fairly deducible from the record; alleging the rescission of the contract; and praying for return of the fifteen thousand dollars paid as a deposit on the purchase price of the land. Judgment was given for defendant on the main case and for the return of the deposit according to the prayer of the cross-complaint. This appeal is from the judgment and from the order of the superior court denying the motion of plaintiffs for a new trial.

Respondent's theory, which the court below adopted, was that the chain of title offered by appellants is not the *record* contemplated by the terms of the contract; but that the record from which title should be fairly deducible is the entire record of the city and county: that this setting (the entire record) alone determines whether or not the "chain" is sufficient; and that the setting having been destroyed, there could be no title furnished by appellants in accordance with the terms of their contract of sale.

Appellants concede that the vendee should have a title "fairly deducible of record," but contend that, having furnished a chain of title leading from a recognized source, the government of the United States, they have fulfilled their part of the agreement and that the burden is upon the vendee to point out defects in the title. They further assert that the preservation of the general index in the recorder's office furnishes the vendee with sufficient means of determining whether or not there is any outstanding title in opposition to their proffered chain of title, or any cloud upon it. In support of their first contention they cite *Easton* v. *Montgomery,* 90 Cal. 313, [25 Am. St. Rep. 123, 27 Pac. 280]. In the case at bar, however, the vendee did point out a defect in their title which was admittedly good when made, as at that time they had no deed of record conveying or purporting to convey the title to them. They sought to remedy this defect and doubtless did everything in their power to offer a perfect title; but if their theory be correct, the burden of proof would have been as effectually shifted to the vendee if they had met his objection to the sufficiency of their title by merely filing a quitclaim deed from some one, releasing to them that person's interest in the property. This cannot be the correct rule of law, because "in every executory contract for the sale of land there is an implied condition that the title of the vendor is good, and that he will transfer to the vendee by his deed of conveyance a title unencumbered with defect." (See *Easton* v. *Montgomery,* 90 Cal. 314, [25 Am. St. Rep. 123, 27 Pac. 280], and cases cited.)

In relation to the preservation of the general index, it may be said that the mere mention (if any were therein contained) of persons and instruments having relation to the land here in litigation would furnish the intending purchaser with nothing more than clues to the documents, without apprising him of any substantial part of their contents. Such data as the index contained might constitute constructive notice of the existence of the recorded instruments relating to this property, but would not have any higher function.

That the destruction of the records in San Francisco by the great fire of April, 1906, made all titles for the time practically unmerchantable, cannot be doubted. The very purpose of the McEnerney Act was the removal of this objection to titles in that city and county. In commenting upon that statute this

court has used the following language: "The general purpose
of the statute is plain. It was intended to provide a method
whereby owners in possession of real estate in counties where
the records are destroyed to such an extent as to make it
impossible to trace a record title may secure a decree which
shall furnish a publicly authenticated evidence of title. It is
hardly necessary to point out that under the system of regis-
tration of land titles which has grown up in all of the states
of this union it is practically essential to the security of owner-
ship in real property that there exist some method by which
the title can be made clear of record. Without regard to the
effect of duly recorded instruments as constructive notice
(whether or not the record remains in actual existence), the
registration of titles has become so thoroughly imbedded in
our system of dealing with lands that a title which cannot be
traced and established by some form of public record is prac-
tically unmerchantable. . . . It is also matter of common
knowledge that in the city and county of San Francisco at
least, if not in other counties, the disaster of April last worked
so great a destruction of the public records as to make it im-
possible to trace any title with completeness or certainty. That
some provision was necessary to enable the holders of real
estate in this city to secure to themselves such evidence of title
as would enable them not only to defend their possession, but
to enjoy and exercise the equally important right of disposi-
tion, is clear." (*Title etc. Restoration Co.* v. *Kerrigan,* 150
Cal. 305, [119 Am. St. Rep. 199, 88 Pac. 356].)

We cannot consider the motives which prompted respondent
to rescind the contract of sale. It was his right under that
instrument to receive a perfect title of record at the time or
within the time specified in the agreement. This the plaintiffs
could not give him. He was entitled to rest upon the pro-
visions of the contract, whether or not his real purpose was to
avoid taking and paying for a tract of land that had depre-
ciated in value. In determining his rights we must only con-
sider the title as it existed at the time fixed for the performance
of the contract and the delivery of the conveyance. (*Rey-
nolds* v. *Borel,* 86 Cal. 538, [25 Pac. 67] ; *Turner* v. *McDonald,*
76 Cal. 177, [9 Am. St. Rep. 189, 18 Pac. 262] ; *Wilcox* v. *Lat-
tin,* 93 Cal. 594, [29 Pac. 229] ; *Gwin* v. *Calegaris,* 139 Cal. 387,
[73 Pac. 851] ; *Calhoon* v. *Belden,* 3 Bush, (66 Ky.) 674.) In

*Calhoon* v. *Belden,* the court considered a problem somewhat like that presented to us. The litigants had entered into an executory contract for the exchange of houses. Each had delivered possession to the other and their agreement provided for conveyances of titles at a day certain. Before that date one of the houses burned, and subsequently the courthouse was destroyed by fire. The entire record of Calhoon's title was burned. Calhoon brought suit for specific performance, and Belden answering denied the sufficiency of the plaintiff's title and prayed for a rescission of their agreement. Belden was successful in the lower court, and the decree refusing to enforce specific performance and rescinding the contract according to Belden's prayer was sustained on appeal. The following significant language is used by the court: "If, in fact, Calhoon's title be perfect, Belden is not bound to accept his conveyance without such proof of it as will arm him with the recorded means of vindicating its validity in after times, and there is no such proof, or even allegations, in this case. He cannot, therefore, be entitled to a specific execution of the contract, but is equitably bound to take back the damaged lot and restore to Belden that which was exchanged for it. As the contract implied that perfect titles were to be interchanged and guaranteed, a rescission is the inevitable consequence in equity." (See, also, *Hooe* v. *O'Callaghan,* 10 Cal. App. 567, [103 Pac. 175] ; *Cabrera* v. *Payne,* 10 Cal. App. 675, [103 Pac. 176].)

In view of the conclusion which we have reached, it is unnecessary to examine respondent's assertion that the appellant's chain of title is deficient in itself. As plaintiffs were not able to furnish to defendant, according to the terms of the agreement, a title "fairly deducible of record" because there was no complete record from which he could determine the nature and defensibility of the offered title, it follows that the judgment of the superior court denying plaintiffs' prayer and decreeing restoration of the deposit to defendant must be sustained, and it is so ordered. The order denying the motion for a new trial is also sustained.

Lorigan, J., and Henhsaw, J., concurred.

Hearing in Bank denied.