[S. F. No. 9332. In Bank.—December 7, 1921.]

JOSEPH CRAIG, Respondent, v. RICHARD WHITE, Appellant.

[1] PUBLIC LANDS — UPLANDS BORDERING ON LAKE — PATENT.—A United States patent to uplands bordering on a lake conveys title to the actual margin of the lake, although the surveyed meander line does not conform to the actual water line of the lake, and a state patent under the act of March 24, 1893, to land between such meander line and the lake, conveys no title, in the absence of proof of a recession or drainage of the waters of the lake.

[2] VENDOR AND VENDEE—EXECUTORY CONTRACT—PRIOR APPROVAL OF TITLE.—An approval of title by a purchaser before entering into a contract of purchase does not, in the absence of an express agreement, or of facts constituting an estoppel, operate as a waiver of the right to a deed carrying the title, on the final execution of the contract.

----

1. Waters and watercourses as boundaries, notes, 30 **Am. Dec.** 286; 27 Am. **St. Rep.** 56.

[3] ID.—PAYMENT AND ACCEPTANCE OF DEED — PRIOR APPROVAL OF TITLE.—Ordinarily the payment of the purchase price and acceptance of a deed to land, after approval of title by the purchaser, precludes him from rescinding or recovering the purchase money upon failure of his title.

[4] ID.—MERCHANTABLE TITLE—IMPLIED AGREEMENT.—In case of an executory contract, there is an implied agreement on the part of the vendor to convey a merchantable title, and failure to do so on demand and upon tender of final payment is a breach of the contract which justifies rescission and recovery of the money paid by the purchaser.

[5] ID.—PLACING OF DEED IN ESCROW—CONTRACT NOT EXECUTED.— The placing in escrow of a grant, bargain, and sale deed without express covenants, to be delivered to the grantee upon the completion of stated payments, and providing for a forfeiture of all rights of the grantee for failure to make any payments within thirty days after maturity, does not, on its face, constitute an executed conveyance such as to merge the implied agreement of the contract to convey a good title into the covenants of the deed.

[6] ID.—EXAMINATION AND ACCEPTANCE OF IMPERFECT TITLE — ESTOPPEL.—An examination and acceptance of an imperfect title, precedent to entering upon a contract to purchase, might operate as an estoppel against rescission, either by express agreement or under circumstances giving substantial advantage to the purchaser, or operating to the detriment of the vendor.

[7] ID.—RESCISSION—WAIVER—KNOWLEDGE.—A waiver of right of rescission implies knowledge, actual or constructive, of the existence of the right and an intention to relinquish it.

[8] ID.—NOTICE OF RESCISSION—WANT OF LACHES.—A purchaser is not guilty of laches in failing to give notice of rescission before the time has arrived for final payment and delivery of the deed, since the vendor has until such time to make his title good.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

Samuel M. Shortridge for Appellant.

A. E. Shaw and A. E. Cooley for Respondent.

---

8. Necessity and effect of notice of rescission before party can be placed in default as to time for performance of contract, note, 4 A. L. R. 822.

SLOANE, J.—The plaintiff in this action brought suit to recover the sum of $20,797.17, paid to defendant as part of the purchase price of real estate under a contract which was rescinded by plaintiff, the purchaser, because of failure of title in the defendant, the vendor.

Judgment was for plaintiff and defendant appeals.

The finding of the trial court that the defendant had no title to the land at any time and failed to convey title upon demand and tender of full performance of the contract by plaintiff is amply supported by the evidence.

The original contract of purchase and sale called for a conveyance of all of the defendant's "holdings on the shore of Clear Lake in Lake County, Calif., being about 350 acres and embracing about 13 miles of lake shore land."

[1] The evidence disclosed that the lands referred to consisted of a strip of waterfront along the borders of the lake lying between the meander line as established by the United States survey and the actual water line of the lake.

According to the calls of the United States field-notes, it is shown that this meander line does not conform to the actual waterline of the lake, but that the meander line is a sufficient distance from the actual border of the lake to inclose between such line and the water line of the lake the quantity of land called for by the contract between plaintiff and defendant.

Defendant's claim of title was evidenced by patents from the state of California purporting to convey by courses and distances the land between the meander line and the lake "under an act of the legislature of the state of California entitled an act regulating the sale of the lands uncovered by the recession or drainage of the waters of inland lakes and unsegregated swamp and overflow lands, and validating sales and surveys heretofore made," approved March 24, 1893.

These conveyances were made on the theory that the meander line as marked by the United States survey constituted the actual boundary between the uplands belonging to the government and the state lands included within the borders of the lake. Prior to the issuance of state patents to the defendant, United States patents had

been duly issued to settlers on the government uplands bordering on this part of the lake, which patents, under the established rule governing such transfers, conveyed title to the patentees, to the actual margin of the lake. (Civ. Code, sec. 830; *Lamprey* v. *State*, 52 Minn. 181, [38 Am. St. Rep. 541, 18 L. R. A. 670, 53 N. W. 1139]; *Hardin* v. *Jordan*, 140 U. S. 371, [35 L. Ed. 428, 11 Sup. Ct. Rep. 808, see, also, Rose's U. S. Notes].)

It also was shown in evidence that there had been no recession or drainage of the waters of the lake and that there had been, therefore, no additional land uncovered below the original water line to which defendant's state patents could attach. The title, therefore, to all the land covered by the contract between plaintiff and defendant was vested in other parties under the United States patents. There was, moreover, introduced in evidence the judgment-roll in an action by a grantee under the government patents, in which action both the plaintiff and defendant here were made defendants, wherein a judgment had been given and had become final, quieting title in the claimants under the government title, and wherein it was found "that said defendants Richard White and Joseph Craig have not, nor has either of them any estate, right, title, or interest whatever in or to any of said lands or premises," referring to lands described in the complaint. This description covered all lands bordering on the lake included within eleven of the thirteen miles of lake front in controversy here. We think this judgment-roll was properly admitted in evidence.

Neither of the parties to this action were ever in possession of the land contracted for. There was, if not a complete failure of consideration for the money paid to defendant under this contract, such an approximation to a complete failure as to justify a rescission by plaintiff and the recovery of the money paid, unless defendant was justified to raise the question of failure of title by waiver or laches.

The instrument setting out the terms of the contract for the sale of this land, dated July 16, 1906, and signed by the defendant, acknowledged the receipt of one hundred dollars from the plaintiff, on account of purchase price of the land, and provided that "said Craig is to have until and including the 2d day of August, 1906, to examine title to

property, and shall have to that date to pay an additional sum of $1500.00, and to have a deed placed in escrow to be delivered to him, his heirs 'or assigns, upon condition that he or they shall pay to me or my heirs or assigns the additional sum of $14,400,'' payable in designated annual installments. It was also specified that, ''should the title of said undersigned prove unsatisfactory to said Craig,'' that he, the said Craig, ''may on or before August 2, 1906, have return of said $100, and cancel this contract.''

On the date specified, August 2, 1906, plaintiff, by his attorney, notified defendant that he was ready and willing to make the, one thousand five hundred dollar payment, accepted the terms of the contract and demanded that the deed to the premises be executed and placed in escrow as therein provided.

The deed was prepared, signed, and acknowledged by defendant, and, after its inspection by plaintiff, placed in escrow with a trust company under an escrow agreement which set out the terms and conditions for the deferred payments, and directed the delivery of deed to plaintiff when the payments were completed.

The deferred payments were thereafter met substantially as required by the contract, or as extended by agreement. It is questioned by appellant that some of the extensions were authorized, but the payments were accepted without protest, and no default on the part of plaintiff can be predicated upon such delays as occurred. Prior to the falling due of the last installment, defendant's claim of title was called in question by the suit of the holder of title under the governmental patents. Plaintiff thereafter and within the period allowed by his contract tendered payment of the balance due upon condition that the defendant convey to him a good title to the land in question. This was not done, and this suit was brought for the recovery of the purchase money already paid.

[2] The main contention of appellant, and the real point at issue on this appeal, is as to whether or not the election of plaintiff to affirm the contract and consummate the deal, after the period of seventeen days given to examine title and exercise his option to purchase, constituted such an acceptance of whatever title defendant might have, irrespective of its validity, as to estop him from pleading a failure of

consideration. Time was given under this agreement of the vendor to sell for the examination of title as a condition precedent, not to the acceptance of a conveyance, but as preliminary to entering upon the contract of purchase. The approval of the title under such a provision should not, in the absence of express agreement, or of facts constituting an estoppel, operate as a waiver of the right to a deed carrying the title, on the final execution of the contract.

[3] It may be conceded that ordinarily the payment of the purchase price and acceptance of a deed to land, after approval of title by the purchaser, thus effecting an executed contract, precludes him from rescinding or recovering the purchase money upon failure of his title. (*Bryan* v. *Swain,* 56 Cal. 616; *Frederick* v. *Youngblood,* 19 Ala. 680, [54 Am. Dec. 209].)

[4] On the other hand, it is the general rule, in case of an executory contract, that there is an implied agreement on the part of the vendor to convey a merchantable title, and failure to do so on demand and upon tender of final payment is a breach of the contract which justifies rescission and recovery of the money paid by the purchaser. (*Backman* v. *Park,* 157 Cal. 607, [137 Am. St. Rep. 153, 108 Pac. 686]; *Crim* v. *Umbsen,* 155 Cal. 697, [132 Am. St. Rep. 127, 103 Pac. 178]: *Sanders* v. *Lansing,* 70 Cal. 429, [11 Pac. 702]; *Winkler* v. *Jerrue,* 20 Cal. App. 559, [129 Pac. 804]; *Flinn* v. *Barber,* 64 Ala. 193; *Eggers* v. *Busch,* 154 Ill. 604, [39 N. E. 619].)

This distinction between the rights of the purchaser under executed and executory contracts is plainly stated in *Bryan* v. *Swain, supra.* In that case plaintiff entered into an agreement with defendants by the terms of which he agreed to sell defendants certain parcels of land. The deed was to be a good and sufficient one to convey the title free from all encumbrances and was to be executed and delivered when full payment of the purchase money was made. A grant, bargain, and sale deed was executed and delivered by plaintiff to defendants and a note and mortgage was taken for the unpaid purchase price. This completed the transaction as an executed contract. Title to one of the tracts covered by the contract and deed had never vested in the grantor. This was pleaded as a defense to an action to recover on the mortgage. Chief Justice Morrison,

writing the opinion for this court, says: "There can be no doubt that the plaintiff was obliged, under the agreement, to execute a good and sufficient deed, conveying the title; and if this case depended upon such agreement, the matter pleaded would be a good defense to the action. But the finding of the court is, that the deed was taken and accepted in execution of the contract. . . . The rights of the defendants, therefore, depend upon the deed, and not upon the agreement, the latter being merged in and extinguished by the former."

It was further held in the case cited that the deed having been accepted in execution of the agreement, the defendants must look to its covenants for a defense to the action.

But there, as here, the deed was one of grant, bargain, and sale, and the only covenant was the implied covenant that the grantor had not previously conveyed the premises, and that they were free from all encumbrances made or suffered by him (Civ. Code, sec. 1113), and, there as here, there was no breach of such implied covenant to which the purchaser could resort for relief.

[5] Appellant, in the case before us, demands the application here of this rule of an executed contract, on the theory that the placing in escrow of a deed to the premises was a complete execution of the contract on the part of the vendor; that there was no further act for him to perform, and that the only condition to the delivery of the deed was the payment of the balance of the purchase price, and that the acceptance of the contract and execution of the escrow after the stipulated time for examining title was a waiver of all objection to the title.

Was the escrow deposit of this deed, for delivery upon payment of the balance of the purchase price, an execution of the contract to convey? In the first place, there was no mutual contract between the parties prior to the escrow. All that the agreement executed in the first instance by the defendant amounted to was an option giving the plaintiff the privilege to purchase on specified terms at the end of a specified period if he was satisfied, from an examination of the title, to proceed with the deal. His refusal for any reason to proceed further could only have subjected him at most to the loss of the one hundred dollar initial payment. It was only when, after he expressed himself as satisfied,

paid the one thousand five hundred dollar installment of the purchase price, and the deed and escrow agreement were executed by defendant and ratified by the plaintiff, that a mutual contract of purchase and sale was perfected. Then it was that the original option and offer of defendant became a contract of purchase and sale, and the nature and terms of such contract are evidenced by the escrow agreement signed by defendant and accepted over the signature of plaintiff.

The deed was an ordinary grant, bargain, and sale deed, without express covenants.

The escrow paper was as follows:

"California Safe Deposit & Trust Company,

"San Francisco, Cal.

"Gentlemen:

"There is herewith delivered to you a deed of conveyance dated August 2nd, 1906, from the undersigned, Richard White, as grantor, to Joseph Craig, as grantee, embracing Lake Shore lands in Lake County, California, which deed is placed in escrow with you and is to be held by you and delivered to said grantee, his heirs or assigns, upon the condition that he shall pay, and when he or they shall have paid to you for account of the undersigned, or his heirs or assigns, the sum of fourteen thousand and four hundred dollars ($14,400.00) in United States gold coin, at the time and in the manner following, to-wit: Sixteen hundred dollars ($1600.00) on or before the second day of August, 1907, and a like sum on or before the second day of August of each year thereafter until the said sum of fourteen thousand and four hundred dollars ($14,400.00) is paid. Together with interest upon all of the said deferred payments at the rate of three per cent (3%) per annum from August 2nd, 1906, until paid, interest payable annually at the same time as the payments of the principal installments as above.

"The whole unpaid balance may be paid at any time and if the same shall be paid within three years after the 2nd day of August, 1906, all interest which shall have been actually paid shall in that event be credited upon the principal, and considered as having been paid on that account and not as interest.

"If the said grantee, his heirs or assigns, shall fail to make payment of any of such installments at or before maturity,

or within thirty days thereafter, he or they shall forfeit all right to have a delivery of the said deed, and shall forfeit all right to the moneys which may have been paid, and the said deed shall be re-delivered to the undersigned, his heirs or assigns, free from all claims or rights of the said grantee, his heirs or assigns.

"Witness my hand at San Francisco, California, this 3rd day of August, A. D. 1906.

"RICHARD WHITE.

"I accept the terms of the within conditions.

"J. CRAIG."

This transaction does not on its face constitute an executed conveyance such as to merge the implied agreement of the contract to convey a good title into the covenants of the deed, as indicated in *Bryan* v. *Swain, supra.*

The placing of the deed in escrow did not make it an executed instrument. There had been no delivery to the purchaser, no transfer of title. (Civ. Code, sec. 1057; 3 Washburn on Real Property, 586; *Whitney* v. *Sherman*, 178 Cal. 435, [173 Pac. 931].) It is said by this court (*Fitch* v. *Bunch*, 30 Cal. 212), that "An escrow differs from a deed in one particular only, and that is the delivery"; but the lack of delivery is a very essential omission to the consummation of a conveyance. It will not be questioned that the failure of a grantor's title pending the delivery of an escrow deed would support a rescission by the vendor, unless the deed itself and not the title was the subject of the agreement between the parties. The same result follows when such title has failed prior to the escrow; because the agreement, express or implied is that the escrow deed will convey title under the same conditions. In this case the implied agreement for title remained executory. The contract to convey a good title was independent of the escrow itself. That was but one of the steps toward the consummation of the contract, the final one on the part of the vendor, it is true, but not such as to satisfy the contract until its delivery.

We have been referred to no authority which holds that mere opportunity to investigate title before entering into a contract of purchase, and the implied approval of the title offered by subsequently entering into the contract, constitutes a waiver of the obligation of the vendor to furnish

title on tender of the final payment. The fact of inspection and approval by the plaintiff here of the deed offered for escrow has no significance, because the deed itself was regular on its face and purported to convey the title to the land contracted for.

[6] An examination and acceptance of an imperfect title precedent to entering upon a contract to purchase, by express agreement or under circumstances giving substantial advantage to the purchaser, or operating to the detriment of the vendor, might operate as an estoppel.

But even an express agreement to buy and pay for land to which it was known the vendor had no title whatever would be void for want of consideration.

Here there is no claim of an express waiver, and there are no circumstances to sustain an equitable estoppel of the purchaser.

It is entirely clear that both parties contracted on the belief that the defendant had and could convey title to the land. The plaintiff, although it does not so appear of record, presumably made some search or inquiry. The record title appeared to be in defendant. The plaintiff, by entering upon the contract to purchase, impliedly, at least, expressed himself as satisfied that the title was good. We are of the opinion that this did not preclude him from rescinding while the contract was still executory, and not merged in an executed and delivered deed of conveyance, when he discovered that the defendant had no title whatever and could not make such conveyance.

[7] As is said in Ruling Case Law (27 R. C. L., p. 908), "To constitute a waiver within the definitions given, it is essential that there be an existing right, benefit or advantage; a knowledge, actual or constructive, of its existence, and an intention to relinquish it. No man can be bound by a waiver of his rights, unless waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights, and intends to waive them." And again: "In the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to."

It can hardly be seriously contended in this case that the defendant was impressed by anything the plaintiff said or did, with a belief that the latter intended to accept an entirely inoperative deed in satisfaction of his contract.

[8]   There was no laches in failing to give notice of rescission before the time had arrived for final payment and delivery of the deed, because the defendant had until such time to make his title good, and it could not appear until the judgment was given in the attack upon defendant's title that he would be unable to do so. The vendor is not in default in such contract if he is able to furnish title when the conveyance is due (*Bachman* v. *Park, supra; Hanson* v. *Fox,* 155 Cal. 106, [132 Am. St. Rep. 72, 20 L. R. A. (N. S.) 338, 90 Pac. 489]; *Garberino* v. *Roberts,* 109 Cal. 125, [41 Pac. 857]; *Easton* v. *Montgomery,* 90 Cal. 307, [25 Am. St. Rep. 123, 27 Pac. 280]). And it was not incumbent on plaintiff to tender his final payment so as to enable him to make demand for a conveyance of title before the final payment was due.

Appellant places strong reliance upon the decision in the case of *Sage L. & I. Co.* v. *McCowen,* 30 Cal. App. 126, [57 Pac. 244], in support of his contention that there was a waiver of objections to invalidity of title.

In that decision of the court of appeal of the third district, in an opinion by Mr. Justice Burnett, it was held that, upon the examination of title by vendee under an executory contract to purchase, failure to point out defects constituted a waiver. We think, as pointed out by the district court of appeal, there is a material distinction between that case and this. In the case cited the purchasers did point out the defect in the title they were contracting for and expressly agreed in writing to accept it on specified conditions.

In the first place, the purchasers were furnished an abstract and given thirty days thereafter to make an examination, and report defects, the vendor agreeing to clear such defects within a reasonable time. Title to part of the land was approved and accepted and deeds of conveyance made and delivered. As to part of the land, certain defects were pointed out, and ostensibly cured in a suit to quiet title brought by the vendor. The only remaining objection was that one defaulting defendant served by publication was entitled under the law to appear within one year and contest

the proceedings. A deed to this property was placed in escrow under the express agreement of the purchaser that if the defaulting defendant did not appear within the year the deed would be accepted. No such appearance was made, but the purchaser discovered other defects in the title; but, under the state of facts indicated, it was held that grounds of objection other than that specified in the agreement were waived.

This is not contrary to the doctrine we have set out in this opinion. In this case we hold there was no express waiver, and no facts to support an equitable estoppel to plead a failure of title.

The judgment is affirmed.

Lennon, J., Wilbur, J., Shaw, C. J., Shurtleff, J., and Waste, J., concurred.