[Civ. No. 8758. First Appellate District, Division One.—May 16, 1933.]

FRED HAMILTON et al., Respondents, v. WILLIAM ELVIDGE et al., Appellants.

Fred Schaeffer and Walters & Mauk for Appellants.

Glen Behymer for Respondents.

COMSTOCK, J., *pro tem.*—This is an action to quiet title to certain lands in Santa Barbara County. Four of the original defendants defaulted, and the action was dismissed as to several fictitious defendants. Judgment went for the plaintiffs and all of the defendants who appeared in the action appeal from the judgment.

The essential facts are as follows: Joseph Elvidge, the former owner of the lands in controversy, died testate on March 18, 1922. William Elvidge, a son, was appointed executor of his will. During the course of administration of the estate, pursuant to regular proceedings for a sale of real estate therein, said property was sold to the plaintiff Fred Hamilton and an executor's deed, dated April 11, 1925, was made, executed and delivered to him by said executor. This deed and all of the proceedings for the probate sale purported to dispose of "all of the right, title, interest and estate of the said Joseph Elvidge, deceased, at the time of his death and all of the right, title and interest that the estate of said decedent has by operation of law or otherwise acquired other than and in addition to that of said decedent at the time of his death", in and to the real estate in question, without mention of any outstanding oil and

gas lease or other cloud upon the title or claim against the property. Prior to this sale, during the administration of the estate, and by a document bearing date of January 23, 1924, signed "William Elvidge Owner", the said Elvidge purported to lease and convey to the defendants J. W. Starkweather, Henry Goedinghaus and Tom Ballester, the "exclusive privilege and right to prospect for, drill wells for the development of, and sell or otherwise dispose of petroleum oil, naphtha, gas, or any form of carboniferous products found upon or lying within or under" the premises in question and other lands not in controversy. This document contains other provisions common to oil and gas leases, concludes with a witness clause and is signed as aforesaid by Elvidge and also by the said three defendants. Following these signatures there is a general form of notarial certificate showing the acknowledgment of the execution of said instrument by the said three defendants, but not by Elvidge, on the eleventh day of February, 1924, before a notary public. Attached to said document so acknowledged is a further writing, describing the parties as "William Elvidge, the lessor, and J. W. Starkweather, Tom Ballester and Henry Goedinghaus, the lessees", reciting among other things that "the purpose of the grant of this lease is to secure the active influence of these lessees in encouraging capital or some operating company" to sink a prospect well for oil in the limits of a territory in the floor of the Santa Maria Valley, now unexplored (describing by metes and bounds a territory apparently of considerable extent and not purporting to be owned by the lessor), or, failing in that, to organize themselves into an operating company and drill said prospect well "under the terms and conditions as set forth in the hereto attached lease end of this agreement". This writing is also signed by all of said parties at the end thereof, but is not itself dated nor further acknowledged. It appears, however, that the two writings constituted but one agreement. They were recorded as one document in the office of the county recorder of Santa Barbara County on February 13, 1924. No authority for the execution of this oil lease was obtained from the probate court. It does not purport to have been executed by Elvidge in his capacity as executor. An agreement ratifying the act of William Elvidge in signing said lease was executed

between the said William Elvidge himself and nine others, describing themselves as heirs of Joseph Elvidge, and J. W. Starkweather, Henry Goedinghaus and Thos. F. Ballester, bearing date of January 23, 1924. This instrument was not acknowledged before a notary and was not recorded. The signatures were actually affixed at various times between its date and approximately the thirteenth day of February, 1924. None of the plaintiffs had knowledge of its existence or contents before the execution and delivery of said executor's deed. All of the signatures were identified as genuine except that of Stella Geering, one of the parties thereto, whose name was signed by William Elvidge under the purported authority of a letter in the handwriting of Stella Geering, dated February 5, 1924, addressed "Dear Sister Sarah" and signed "Stella", in which the writer stated, "Well Dear you all have my say (yes) about leasing the ranch so go a head."

The plaintiffs claim title under and through the executor's deed. The defendants base their claims upon the oil lease and certain subleases and partial assignments thereof.

We have found it extremely difficult to comprehend exactly what legal propositions appellants rely upon. One of their contentions is set forth in their brief in the following language: "The contention of the plaintiff in this action is that the oil and gas lease is a conveyance of an interest in the property, or if not, then an encumbrance, and we contend it is neither one or the other, that it being executed by the widow and heirs at law of the decedent, and the property is sold for the payment of debts. That therefore the lease was of no force or validity whatsoever. We contend that an oil and gas lease is neither a conveyance or an encumbrance, while it is fundamental law that the title, upon the death of the deceased, vests in the widow and heirs of the deceased, subject to the payment of the debts of the estate, while the deceased left a great deal of other property than the property in controversy, and whether or not it was necessary to sell this particular property, the evidence does not disclose." This language is so uncertain and unintelligible that we find ourselves unable to gather therefrom any clear idea of the points intended to be made. From reading the entire brief, however, we gather that appellants urge that the widow and heirs of Joseph Elvidge, deceased, as his

heirs at law, had a right to execute the oil lease and that said lease is valid; that an oil lease is merely a license or option to explore for oil, gas or other hydrocarbon substances, does not create an interest in lands and that an action to quiet title against such rights as are conferred thereby will not lie against the lessees or those claiming under them; and that Fred Hamilton, the purchaser at the probate sale, took the executor's deed with knowledge of the oil lease and hence subject thereto. There is also an estoppel urged in behalf of the defendant George O. Gorham, who, it is contended, drilled a well on adjoining land in reliance upon acts of Fred Hamilton claimed to have been in recognition of the validity of the lease on the land in controversy.

It does not appear from the record before us whether any of the persons who assumed to execute or ratify the oil lease were devisees under the will of Joseph Elvidge, deceased. Counsel for plaintiff offered to stipulate who were such devisees, as shown by the decree of distribution, but counsel for defendants rejected this stipulation and asked for one to the effect that the surviving wife and nine children, being the same persons whose names appeared on the ratifying agreement, were the heirs at law, as distinguished from devisees, of Joseph Elvidge, deceased, which was granted.

It is plain that since Joseph Elvidge died testate, his devisees, and not those who might have been his heirs at law entitled to take by succession if he had died intestate, were the persons in whom his estate vested immediately upon his death. In the absence of a showing of who the devisees were, there was an utter lack of foundation for the claim that the lease and ratification were of any more validity than if executed by absolute strangers to the title. However, this point is not urged by respondents, so we shall proceed to consider whether said documents were of any validity or conferred any rights as against the purchaser at the probate sale as if it were established that the signers thereof were all devisees under the will of said deceased.

Respondents make the point that the executor's deed related back to the death of the decedent and cut off all rights which may have been acquired under the lease and ratification. This contention is sound and must be sustained. Such is the plain effect of section 1555 of the Code of Civil Procedure in effect at the time of these transactions and

is well settled by authority. The general rule is stated in *Estate of Benvenuto,* 183 Cal. 382 [191 Pac. 678], that property of a decedent vesting in an heir upon his .death is subject to sale for such reasons and purposes as may be then authorized by law. (See, also, *Blair* v. *Hazzard,* 158 Cal. 721 [112 Pac. 298]; 9 Cal. Jur. 474.) In *Gutter* v. *Dallamore,* 144 Cal. 665 [79 Pac. 383], it was held that a probate sale vested in the purchaser the title of the decedent as of the date of his death as against the asserted lien of a mortgage and assignment of his interest made by an heir prior to the sale. The lessees could take no greater rights than their lessors had and since the estate which passed to the testator's devisees upon his death was subject to administration and sale for the purposes thereof, and was actually sold for such purposes, the attempted oil lease was of no force or effect and created neither right, title, license, option nor privilege as against the purchaser at the probate sale. This being so, it is unnecessary to discuss whether such purchaser had knowledge of the lease recorded without Elvidge's acknowledgment or of the unrecorded instrument of ratification. ▆▆ The buyer at such a sale, it is true, is subject to the maxim of *caveat emptor* and takes without warranty of the title of the decedent, but this applies only to the condition of the title at the time of the decedent's death. He is not bound to beware of anything which may have clouded the title since that time, but under the plain terms of the statute is entitled to all of the right, title, interest and estate that the decedent owned at the time of his death or which his estate may have acquired subsequently.

▆▆ Appellants cite the case of *Brookshire Oil Co.* v. *Casmalia Ranch etc. Co.,* 156 Cal. 211 [103 Pac. 927], and many cases from other jurisdictions defining the nature of oil leases and the rights which they confer. They argue from these that since they hold that such leases in their usual form do not create an estate in land or in the undiscovered and uncaptured oil therein, but only a license or option to enter upon the land and develop it for oil, in the nature of an incorporeal hereditament, actions will not lie to quiet title against them or the claims of those asserting rights thereunder. Granting the premise without attempting here to define the exact nature of the right or title created, nevertheless appellants' conclusion does not follow and is

incorrect. Under our practice it matters not whether a claim is based upon a valid title or interest in real estate or upon a mere pretension or asserted right therein or thereto, or issues out of, or concerns, or is annexed to or exercisable in connection with such property; it may still be the subject of an action to quiet title such as is provided for by section 738 of the Code of Civil Procedure. As was said in *Castro* v. *Barry,* 79 Cal. 443, 447 [21 Pac. 946, 947], ''The statute 'does not confine the remedy to the case of an adverse claimant setting up a legal title or even an equitable one; but the act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension'. (Citing cases.) And the rule may be even more broadly stated, viz., that the action may be maintained by the owner of property to determine any adverse claim whatever. For if the defendant by his answer disclaims all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs.''

Defendants' answer denies plaintiffs' ownership of title in fee and admits defendants' claim of right and interest in the real property in controversy. It further affirmatively pleads the oil lease and prays that their right and title thereto be quieted against plaintiffs. In view of this, appellants' argument that an action to quiet title against the claims arising under the lease will not lie is somewhat surprising. But regardless of the contents of the answer, the law is plain that an action will lie to quiet title against the claims here asserted. (*Dorris* v. *McManus,* 3 Cal. App. 576 [86 Pac. 909]; *Castro* v. *Barry, supra; Head* v. *Fordyce,* 17 Cal. 149; *Jolliffe* v. *Steele,* 9 Cal. App. 212 [98 Pac. 544]; 22 Cal. Jur. 115.)

The court found against defendant Gorham's claim of equitable estoppel. We have carefully read the transcript and find this finding fully sustained by the evidence. Even taking the defendants' version of the facts relied upon as constituting such estoppel, we find them wholly insufficient for that purpose.

A further point is urged by appellants. Objection was made to the introduction in evidence of the executor's deed upon the ground that it showed a consideration different than that specified in the order confirming the sale. The deed, in one of its opening paragraphs, recites the sale for the sum of $28,000 and in a later clause mentions the consideration as being $12,850. The court admitted the deed over this objection. Appellants contend this was error, but cite neither authority nor legal principle in support of their contention. We know of no principle which excludes from evidence a conveyance reciting a cash consideration other than the true one or which contains a recital of consideration in inconsistent amounts. The deed might properly have mentioned but a nominal consideration and been perfectly valid and admissible in evidence. If appellants had been in a position to question the legality of the sale in this proceeding, the court would have been justified in taking evidence to ascertain the true consideration. Whether or not this was necessary is immaterial. It did receive evidence which established not only that the true consideration was $28,000, out of which the estate paid a commission and expenses totaling $1410, but also that the sale was duly confirmed by an order of confirmation which had become final. The objection constituted a collateral attack upon the legality of the sale and such an attack may not be made. (*Dane* v. *Layne,* 10 Cal. App. 366 [101 Pac. 1067]; *Rountree* v. *Montague,* 30 Cal. App. 170 [157 Pac. 623].)

We find no error in the record. The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.