[Civ. No. 8984. First Appellate District, Division One.—June 9, 1934.]

TRADERS FINANCE CORPORATION OF VENTURA (a Corporation), Respondent, v. ROY E. SANDERS, Appellant.

James C. Hollingsworth for Appellant.

Jarrett Beckett for Respondent.

JAMISON, J., *pro tem.*—The complaint in this case contains two counts. The first alleges that prior to the ninth day of April, 1931, plaintiff was the owner of certain meat market fixtures and equipment, and that defendant Sanders was the owner of certain grocery store fixtures and equipment, contained in a certain store building located in the town of Saticoy, California, all of said property being in the possession of defendant Sanders; that with the consent of plaintiff, defendant Sanders sold all of said equipment to one Roy Rasmussen and one E. J. Gordon for the sum of $4,000, and that defendant Sanders has received all of said sale price except the sum of $650 still owing from the purchasers; that plaintiff and defendant Sanders did not determine in advance the respective proportions of the sale price each was to receive and that plaintiff's portion thereof was two-thirds of said sale price. The second count is for money had and received in the sum of $2,666.66.

The action was brought against Sanders and One Doe and Two Doe, and defendants Rasmussen and Gordon were served with summons and substituted for One Doe and Two Doe, Rasmussen appearing in person and Gordon not appearing. Judgment was rendered against Sanders alone. He moved for a new trial and, same being denied, appeals from said judgment.

In December, 1927, appellant was conducting a grocery and general merchandise business in the town of Saticoy. Shortly thereafter he leased a portion of the premises occupied by him to one Jackman for the purpose of operating a meat market. Jackman installed certain fixtures in the meat market consisting of an ice box, ice machine, two meat boxes, Stimson scales, etc. The title to the meat market fixtures was in respondent. Jackman after conduct-

ing the meat market business for a brief period, disappeared. After Jackman left, respondent through its agent and general manager W. V. Scott, agreed with appellant that the meat market fixtures should remain in the possession of appellant upon the understanding that appellant would keep the said fixtures in repair, and he was authorized to sell them for respondent whenever a buyer could be found. In February, 1931, fire injured and damaged appellant's stock of groceries and merchandise, and what remained of it was disposed of. After said last-named date only the meat market fixtures and the grocery store and merchandise fixtures remained. It was agreed that appellant should have the right to sell said meat market fixtures, the price of same to be determined after the sale. In April, 1931, appellant obtained a buyer for all of said equipment, including the grocery and meat market fixtures, for the sum of $4,000, defendant Rasmussen being the purchaser. Shortly after said sale appellant informed Scott of the fact of the sale and they endeavored to determine what amount Scott should receive for the meat market fixtures. Scott demanded $2,000, to which sum appellant objected and offered $850; this Scott refused to accept. Failure to arrive at any agreement regarding the meat market fixtures, appellant notified Scott that he would go back to Rasmussen and get him to release the meat market fixtures from said sale. Appellant then took the matter up with Rasmussen and by agreement with him the meat market fixtures were released from the said sale and the sum of $1250 was credited on said purchase price of $4,000.

Under the contract of sale executed by appellant and Rasmussen for the grocery, general merchandise and meat market fixtures, it was agreed that Rasmussen would pay to appellant the sum of $4,000; $1,000 to be paid upon the execution of the contract, $1,000 on May 10, 1931, $500 in groceries and meat as required by the household of appellant, and the remaining $1,500 in monthly payments of $50 per month. Appellant has received from Rasmussen the sum of $2,350 on the contract. The undisputed testimony of Rasmussen is that there is a balance of $400 owing by him on the contract and this, added to the $1250 for which sum he received credit, makes the unpaid balance on the entire contract $1650. Therefore the finding of the trial court

that appellant had collected on said contract the whole of said $4,000, except the sum of $431.04, is not supported by the evidence.

Appellant contends that respondent ratified the release, from the contract of sale, of the meat market fixtures. To support this contention he produced two witnesses. One of these, Rasmussen, testified that shortly after the release was made Scott called upon him and gave him to understand that respondent was the owner of the meat market fixtures and offered to sell same to Rasmussen. When Rasmussen desired time to consider the matter he agreed with him that he would leave the said fixtures with Rasmussen free of rent. The other witness, Harry W. McNeil, testified that he operated the meat market in Rasmussen's store; that after Scott had talked with Rasmussen he came over to where the witness was working and said he would like the witness to sell the meat market fixtures for him; that he knew Rasmussen placed confidence in him and that he would give him $100 if he succeeded in making the sale to Rasmussen for $1250. Scott, testifying for respondent, said that he had a talk with Rasmussen and learned from him that a credit of $1250, representing the value of the meat market fixtures, had been placed on the contract; that he told Rasmussen he was going to sue appellant, and in case the result of the suit was that said fixtures came back to him. he wanted to make a deal for them with Rasmussen, who told him he would leave their value up to McNeil; that thereupon he had a talk with McNeil and said to him if the said fixtures came back to him that in that event, if McNeil could sell the fixtures, he would give him $100.

There was evidence that the meat market fixtures had been in use for some five years, and their value was placed by witnesses at from $500 to $2,000. The trial court found in effect that the value of said fixtures was the sum of $1500.

It has been held that when an agent makes a sale he has no authority to cancel it without the consent of his principal (*Burroughs Adding Machine Co.* v. *Harris,* 99 Cal. App. 604 [279 Pac. 216]; *Thomas* v. *Anthony,* 30 Cal. App. 217 [157 Pac. 823]); that the principal has still the right, notwithstanding the act of the agent, of compelling the purchaser to abide by the terms of the sale.

However, this action is not against the purchaser but against the agent to recover from him money that he has received which belongs to his principal. Respondent is entitled to recover from appellant only money which the latter had collected and which belonged to respondent. The basis of an action for money had and received is that defendant has money which in equity and good conscience he ought to pay to plaintiff. (17 Cal. Jur., p. 602; *Ackley* v. *Prime*, 99 Cal. App. 534 [278 Pac. 932].)

We are of the opinion that the appellant, under the facts disclosed in this case, has not money which in equity and good conscience he ought to pay to respondent, and therefore the judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.