[S. F. No. 17984. In Bank. Dec. 28, 1949.]

MARY E. MAINS, as Administratrix, etc., Respondent, v. CITY TITLE INSURANCE COMPANY (a Corporation), Appellant.

Tobin & Tobin and Richard Raoul-Duval for Appellant.

Roland Becsey and Joseph B. Bates for Respondent.

EDMONDS, J.—Certain real property owned by the estate of which Mary E. Mains is administratrix was sold by her in accordance with the procedure specified by the Probate Code. City Title Insurance Company, as the escrow holder through which the purchase price was paid, used a part of it without specific authority to satisfy a deed of trust of record. The appeal from the judgment adverse to the title company presents for decision the questions of the legal character of the sale and the escrow holder's liability for paying the debt.

At the time of his death, the decedent owned certain real property subject to a trust deed to secure a note upon which about $3,800 was owing. Pursuant to section 780 of the Probate Code, the administratrix published notice that the property would be sold at private sale for cash. The terms and conditions of sale were stated as follows: ''Purchaser to assume the payment and take the property purchased by him, subject to all the State and County taxes and whatsoever assessments of whatsoever name or nature which are now or may hereafter be charged as a lien against the property purchased by him.''

The bid of $11,450 made by one Derkatch was accepted by the administratrix. Neither party mentioned the deed of trust; it was not discussed by them nor was any express representation made as to any encumbrance.

The sale was confirmed by the probate court and thereafter the administratrix deposited with the title company a deed to the property. In return she received a ''Receipt for Papers,'' which provided that the deed was to be delivered upon receipt of $11,450 with credit for a deposit of $1,145, less incidental charges. The space on the receipt opposite the printed heading, ''pay mortgage—deed of trust'' was left blank.

Before closing the escrow, the title company paid the principal and interest owing on the trust deed note and tendered the remainder, less unquestioned amounts of expenses, to the administratrix. She refused to accept the tender and the present action followed. The trial court determined that she is entitled to approximately $10,300 and the appeal is from the judgment in her favor.

The title company contends that the buyer at a probate sale under sections 754, 780, et seq., of the Probate Code purchases the property free and clear of any encumbrances. It also argues that it had implied authority to pay off the existing deed of trust since the administratrix was legally bound

to convey an unencumbered title. As an additional ground for reversal of the judgment, the appellant asserts that the administratrix cannot maintain an action for money had and received because equitable principles bar recovery of the amount of a debt which she was legally obligated to pay.

In support of the judgment, the administratrix takes the position that the purchaser at such a probate sale acquires only such right, title and interest as the estate has to convey, subject to all equities, liens and encumbrances. She declares that the title company was her special agent, and having collected the purchase price on her behalf, it is liable for the whole amount, less the charges it was specifically authorized to pay. In this connection, she charges that the title company, in paying off the obligation under the deed of trust, was a mere volunteer and cannot offset the sum so disbursed.

■ Under a judicial sale, ". . . the doctrine of *caveat emptor* requires the purchaser to avail himself of all the means of information at hand to ascertain the quality of the property and the character and extent of the title and the deed of an administrator is in the nature of a mere quitclaim." (*Estate of Backesto*, 63 Cal.App. 265, 269 [218 P. 597], citing *Miller & Lux* v. *Gray*, 136 Cal. 261 [68 P. 770]; see *Hammond* v. *Cailleaud*, 111 Cal. 206 [43 P. 607, 52 Am.St.Rep. 167].)

■ On the other hand, this rule does not apply to a sale of land between vendors and vendees generally. "From the use of the word 'grant' in any conveyance by which an estate of inheritance . . . is to be passed, the following covenants . . . are implied, unless restrained by express terms contained in such conveyance: . . . 2. That such estate is at the time of the execution of such conveyance free from encumbrances done, made, or suffered by the grantor, or any person claiming under him." (Civ. Code, § 1113.) Unquestionably, prior to 1919, a probate sale was a judicial sale under which the purchaser obtained no more than a quitclaim deed and the doctrine of *caveat emptor* was applicable. (*Miller & Lux* v. *Gray, supra*; *Estate of Verwoert*, 177 Cal. 488 [171 P. 105]; *Estate of Wickersham*, 139 Cal. 652 [73 P. 541].) This was clearly so because, under the old procedure, a probate sale was made pursuant to an order of court which expressly authorized the transaction. ■ However, the 1919 amendment of section 1517 of the Code of Civil Procedure (now incorporated in Prob. Code, § 755) changed the nature of such a transfer. By that amendment, the administrator was given power to

sell the property in his discretion, subject only to approval of the sale by the court. Considerable reliance is placed by the title company upon the holding in *Estate of Backesto*, 63 Cal.App. 265 [218 P. 597], which arose under the new procedure. In that case, the court said: "A sale is not, properly speaking, a judicial one unless it is made upon express order of the court having jurisdiction of the subject matter of the sale, and which it directs to be sold for the purpose of carrying its judgment into effect, or of directing a disposition of its proceeds." It also stated that "the statutory requirement that no title shall pass until the sale be confirmed, does not give it the incidence of a judicial sale." Certainly this language would indicate that the sale to Derkatch was not a judicial one. But because the sale challenged in that case was made by an administrator with the will annexed, acting under the express authority conferred by the will, the decision should be placed in the category of persuasive argument rather than authority.

To the contrary is certain language in *Hamilton* v. *Elvidge*, 132 Cal.App. 21 [22 P.2d 239], to the effect that "[t]he buyer at such a sale . . . is subject to the maxim of *caveat emptor* and takes without warranty of the title of the decedent. . . ." However, the facts of the case involved merely the validity of certain encumbrances representing money received during the administration of the estate. These were held not to be subject to the doctrine, and therefore the language, insofar as it deals with an encumbrance existing at the date of death, is at best dictum.

Section 754 of the Probate Code provides ". . . the executor or administrator may sell . . . either at public auction or private sale, using his discretion as to which property to sell first. . . ." Although such a sale is subject to approval by the court, as observed in *Estate of Backesto, supra,* "A sale is not . . . a judicial one unless it is made upon an express order of the court. . . ." Accordingly, as the sale to Derkatch was not made pursuant to such an order and the transaction was submitted to the court only for approval, it was not a judicial sale.

■ Moreover, both Derkatch and the title company were entitled to rely on the notice of sale as offering the property for sale without the lien of the deed of trust. It stated that the property would be sold ". . . subject to all the State and County taxes and whatsoever assessments of whatsoever name

or nature. . . ." The words "taxes" and "assessments" do not describe a deed of trust, and excepting property purchased at a judicial sale, there is an implied condition that land will be conveyed free from encumbrance. (*Crim* v. *Umbsen*, 155 Cal. 697 [103 P. 178, 132 Am.St.Rep. 127] ; *Smiddy* v. *Grafton*, 163 Cal. 16 [124 P. 433, Ann.Cas. 1913E 921].) ■ Also, when a sale is made subject to a certain encumbrance, the purchaser may rely upon a similar condition that it is free from any other one. (*Smiddy* v. *Grafton*, supra.)

Practical considerations underlying the administration of the estates of decedents also justify the conclusion that property sold pursuant to sections 754, 780 et seq. of the Probate Code is to be conveyed free of any encumbrance not stated in the offer. If the rule of *caveat emptor* should be held to apply to a sale of real estate in accordance with the procedure specified by section 754, it would be difficult or impossible to liquidate assets. Under such circumstances, no one could safely or intelligently make a bid. Normally the public records do not show the amount of money unpaid upon a note secured by a mortgage or deed of trust at a given time. As a matter of right, no inquiry can be made of the payee concerning the status of a loan and a request of that kind might require much more clerical work than any bank or financial institution is willing to assume. Also, quite certainly, if a reply were made, it would be on the basis of no liability for an error or omission and in many cases, because of residence in another state or for other reasons, the payee would not be readily accessible.

■ The trial court found, upon substantial evidence, that the title company paid the amount necessary to satisfy the note and deed of trust without any instructions from the administratrix to do so. However, under the facts shown by the record, the lack of authority to make that payment does not establish liability. The deed of trust was an obligation directly related to the conveyance for which the escrow holder was responsible. If it had not paid the debt, the administratrix would have been obligated to do so, and she suffered no damage by the use of the estate's funds for that purpose. Had she sued upon the contract, she could have recovered only nominal damages from her special agent for doing that which she herself was legally bound to do in that very transaction. (Civ. Code, § 3360; see *Kenyon* v. *Western Union Tel. Co.*, 100 Cal. 454, 455 [35 P. 75].)

■ Her action for money had and received is governed by different principles. Although there was no specific allegation in the complaint that the title company collected and received money for the use and benefit of the administratrix, the omission was cured by the answer to that effect. That is the theory of the case adopted by her, for she declares that, in reality, the complaint is one for money had and received, and any defect in it was cured by the answer. Unquestionably the trial was conducted upon that theory, and the evidence fully supports the conclusion of the trial court that the action was one upon the common count of money had and received.

■ Although such an action is one at law, it is governed by principles of equity (*Philpott* v. *Superior Court*, 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990]; *Traders Finance Corp.* v. *Sanders*, 139 Cal.App. 191 [33 P.2d 474]; *Highway Comrs.* v. *Bloomington*, 253 Ill. 164 [97 N.E. 280, Ann.Cas. 1913A 471]; *Steuerwald* v. *Richter*, 158 Wis. 597 [149 N.W. 692]).
■ It may be brought ". . . wherever one person has received money which belongs to another, and which 'in equity and good conscience', or in other words, in justice and right, should be returned. . . . The plaintiff's right to recover is governed by principles of equity, although the action is one at law." (*Philpott* v. *Superior Court, supra*, at p. 522, quoting with approval from Page on Contracts, vol. 3, § 1473, pp. 2510-2512.

■ Accordingly, as the action brought by the administratrix is governed by equitable principles, she cannot recover from the escrow holder the amount paid in discharge of the estate's obligation upon the very conveyance which the escrow holder was directed to effect. The equities might well be different if the payment had been applied upon a totally unrelated obligation of the estate, or if a volunteer were seeking to recover the amount which he paid to satisfy the legal obligation of another. But equity and good conscience will not permit the recovery by the administratrix of an amount paid by the title company to relieve the estate from a legal obligation upon the very sale which was the subject of the escrow.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I believe that the sale of property by an executor is subject to the *caveat emptor* rule. The majority opinion reasons that a sale by an administrator not preceded by a court order therefor, but followed by confirmation, is not a judicial sale and, therefore, *caveat emptor* is not applicable. That is a *non sequitur* for the application of *caveat emptor* is *not* based upon whether it is judicial sale or not. *It arises from other factors.* Hence, the turning point is not whether the sale is or is not a judicial one. It was said in the first case in this state on the subject: "The only effect of an administrator's deed is to convey to the purchaser *the title of the deceased.* Such a deed can contain no warranty of the title. *The purchaser must know the law.* The notice was of a probate sale. The bidder, therefore, knew the character of the sale, the effect of the deed, and was bound to examine the title for himself. The language of the notice put him upon his guard. In these sales, *caveat emptor* is the rule." (*Halleck* v. *Guy,* 9 Cal. 181, 197 [70 Am.Dec. 643].) In *Miller & Lux* v. *Gray,* 136 Cal. 261, 263 [68 P. 770], it is said: "It is well settled that an administrator in making sales of real estate is the *mere instrument of the law to transfer such title, and only such title as is held by the estate.* His deed is in fact but a quitclaim deed, and so it is uniformly held touching such sales that the doctrine of *caveat emptor* applies. The same principle applies in case of lease. It is but an estate for years, carved out of and dependent upon the sufficiency of the title of the larger estate of the deceased. In this respect there is no distinction between a lease by an administrator and lease by a guardian; and it is uniformly held that a guardian's lease does not imply any covenant of quiet enjoyment. . . . Moreover, *an administrator cannot contract so as to make his estate liable, except as authorized by statute* . . . Gray, as administrator, had the power to make this lease . . . but in leasing he carved out an estate for years from such title and interest only as were in the estate of Turner." [Emphasis added.] As late as 1935, this court said in *Texas Co.* v. *Bank of America etc. Assn.,* 5 Cal.2d 35, 44 [53 P.2d 127] (not cited in the majority opinion): "Appellant invokes the doctrine of *caveat emptor* to defeat respondent's recovery. This doctrine is applicable insofar as the estate's title to the demised property is concerned. Appellant leased *such title as the decedent had* at his death and it was respondent's

duty to ascertain before bidding, the nature of that title, for it could not, after confirmation, complain of any defects therein.'' [Emphasis added.] (See, also, *Blankenship v. Whaley*, 124 Cal. 300 [57 P. 79]; *Estate of Verwoert*, 177 Cal. 488 [171 P. 105].)

Thus it is clear that the basis for the *caveat emptor* rule is that the administrator *cannot* sell or convey anything except the interest of the deceased at the time of his death; he is the mere instrumentality who, under supervision of the court (confirmation is indispensable) by which the deceased's interest is transferred; he has no authority to make any warranties unless authorized by the court; the purchaser is charged with knowing the quality of deceased's title. *In other words when one purports to sell the property of another by authority of law there is no warranty of title,* or, as expressed by Williston: ''The commonest illustration of the principle referred to in the preceding section is found in sales by those who purport to sell by virtue of authority in fact or law. Such persons unless they expressly warrant title are not liable for the lack of title of the person who is supposed to own the goods . . . So in cases of sales made by a sheriff, or other judicial officer, or an auctioneer, or mortgagee, or assignee in bankruptcy, *or executor or administrator, or guardian,* or simply an agent, as such. If the seller either has authority in fact from a principal to make the sale, or if the principal is bound for any other reason by the agent's act in making the sale, well-known principles of agency will impose the same obligation upon the principal as if he had made the sale directly himself. The agent is not wholly free from implied obligation, but all that he warrants is his authority to act for the principal, and if he has not the authority which he assumes to have he will be liable. If the seller's authority is conferred upon him by law, as in the case of a sheriff, there can, of course, be no implied warranty by the owner of the goods any more than by the officer who makes the sale. Moreover such officers, unlike agents whose power is derived from authority in fact, do not warrant the validity of the authority which they purport to exercise. They are, however, liable for actual representations, fraud, or negligence in the exercise of their duties.'' (Williston on Sales [rev. ed.] § 220, p. 566.) [Emphasis added.] All these things are for the benefit and protection of the creditors and beneficiaries of the estate and they are as certainly safeguarded by a confirmation after sale as by an order authorizing a sale. Hence,

the question should not hinge on a technical definition of a judicial sale—whether an order for sale and confirmation after are required, or only confirmation. Rather, it depends upon the nature of the agent making the sale. To say that the Legislature, merely by simplifying the sale procedure by eliminating the prior order, intended to wipe out the long and firmly established rule of *caveat emptor* is hardly reasonable. Indeed, the Probate Code still retains the provision which long existed, that the deed by an administrator conveys all the ''right, title, interest and estate of the decedent . . . at the time of his death.'' (Prob. Code, § 786.) Nothing more may be conveyed.

In my opinion the trial court followed the correct rule of law in holding that plaintiff was entitled to the full purchase price paid for the property, and the judgment should be affirmed.

Respondent's petition for a rehearing was denied January 26, 1950. Carter, J., and Traynor, J., voted for a rehearing.