[Civ. No. 4444. Second Appellate District, Division One.—April 26, 1926.]

A. K. DETWILER, Respondent, v. W. H. CLUNE, Appellant.

[Civ. No. 4316. Second Appellate District, Division One.—April 26, 1926.]

A. K. DETWILER, Appellant, v. W. H. CLUNE, Respondent.

[1] CONTRACTS—CONDITIONS—PERFORMANCE—DISCHARGE.—Where the performance of an agreement depends upon the happening of an event over which neither party has control, or upon the existence of a specific fund, where the contingent event does not occur, or the fund is not realized, the obligation is discharged.

[2] ID.—JOINT ADVENTURE—PROFITS—PLEADING.—In an action upon a contract providing for payment out of net profits of a venture, the complaint fails to state a cause of action unless it is alleged therein that such profits were in fact realized.

[3] ID. — PERFORMANCE — FAILURE OF CONSIDERATION — DAMAGES.—A right to recover damages for some failure in the performance of express contracts is limited by the amount of loss sustained by the breach, but where, by fault of the promisor, the consideration paid to him has wholly failed, the amount so paid may be recovered.

[4] ID.—CORPORATIONS — SUBSCRIPTIONS TO STOCK — CONDITIONS — PROMOTERS.—In this action for damages for breach of contracts for the sale of stock in a corporation to be organized for the purpose of owning and exhibiting a motion picture film, the conditions under which the contracts were obtained from plaintiff and his assignors, who contributed to the cost and were to share in the profits thereof, and the method used by defendant to obtain the subscriptions, imposed upon defendant the responsibilities of a promoter in the formation of the proposed corporation.

[5] ID.—FIDUCIARY RELATION OF PROMOTER—EVIDENCE.—In such action the position in which defendant placed himself by receiving the money from the contributors, under the circumstances shown by the evidence, obligated him to retain in his hands, until the formation of the proposed corporation, the property rights which were to constitute the principal assets of the corporation, to cause the corporation to be organized within a reasonable time, and to

1. See 6 Cal. Jur. 360; 6 R. C. L. 945.
3. See 8 Cal. Jur. 821; 17 Cal. Jur. 612; 2 R. C. L. 788.

transfer to it the motion picture films and the right to use the same, and his transfer thereof to an existing corporation controlled by himself, in which plaintiff and his assignors had no interest, constituted a breach of contract which could not be restored by his belated offer to organize a corporation at a time when he no longer owned all of such rights.

[6] ID.—FAILURE OF CONSIDERATION—REPAYMENT OF MONEY.—Where there is a total failure of consideration for which money was paid, the law raises a promise on the part of the receiver of the money that he will pay it to the person entitled thereto without any previous request.

[7] JUDGMENTS—SUBSEQUENT ACTION OF IDENTICAL NATURE—ESTOPPEL. A judgment may be used as a bar to a subsequent action of an identical nature or as an estoppel to proof of any fact established thereby.

[8] CONTRACTS—JUDGMENTS—RES JUDICATA.—A judgment in an action to rescind a contract which determined issues of fraud and failure of consideration adversely to plaintiff is a bar to a subsequent action by the same plaintiff to recover money paid on such contract on the theory of failure of consideration.

(1) 13 C. J., p. 640, n. 74.   (2) 33 C. J., p. 868, n. 74.   (3) 5 C. J., p. 1411, n. 45; 13 C. J., p. 847, n. 60; 41 C. J., p. 52, n. 29, (4) 13 C. J., p. 521, n. 18, p. 523, n. 24, p. 524, n. 27, p. 542, n. 30; 14 C. J., p. 254, n. 49.   (5) 14 C. J., p. 254, n. 49.   (6) 14 C. J., p. 254, n. 49; 41 C. J., p. 57, n. 97.   (7) 34 C. J., p. 750, n. 24, p. 906, n. 96.   (8) 34 C. J., p. 814, n. 67.

APPEALS from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hunsaker, Britt & Cosgrove for Appellant Detwiler.

Newby & Palmer for Appellant Clune.

CONREY, P. J.—These are appeals by the several parties from one and the same judgment. The defendant appeals from all of the judgment "except that portion of said judgment in favor of the defendant and against the plaintiff as to the first and second counts of the complaint

6.   See 8 Cal. Jur. 612, 624.
7.   See 15 Cal. Jur. 97.

therein, alleging causes of action in favor of the plaintiff on his personal claim against said defendant.'' The plaintiff appeals from that part of the judgment which was excepted from the defendant's appeal, that is to say, that part of the judgment which reads as follows: ''It is further ordered, adjudged and decreed, that the causes of action alleged by plaintiff in the first and second counts of his complaint herein, and therein alleged to have accrued to' him in virtue of sundry transactions between himself personally and the said defendant, are barred by the force and effect of the judgment in the former action (No. B–50316 in the clerk's register of actions in this court) wherein the said A. K. Detwiler was plaintiff and said W. H. Clune was defendant, which judgment was duly entered in that action on the 4th day of June, 1918, in favor of the defendant therein, and against the said plaintiff; and that the plaintiff in the present action take nothing by reason of the causes of action alleged in the said first count and in the said second count of his complaint in the present action, respectively.'' The judgment in the present action was entered on the thirty-first day of October, 1921, and the action itself was commenced by the filing of the complaint on the eleventh day of July, 1919.

The causes of action of the plaintiff are set out in sixteen separate counts of the complaint. Eight of these counts are alternative (common count) forms of pleading of the several demands stated in the odd-numbered counts. The first two counts are based upon a contract of date November 22, 1915, made between plaintiff and defendant. The others consist of assigned causes of action arising out of similar contracts made between the defendant and persons other than the plaintiff.

It is alleged in the complaint that theretofore, between the first day of August, 1915, and the first day of February, 1916, the defendant was engaged in promoting the production and manufacture of a motion picture film called ''Ramona,'' and in promoting the formation and organization of a corporation for the purpose of owning the negative of said film and exhibiting prints thereof, and effecting the sale of stock in such corporation. The contract between the plaintiff and defendant was in writing, as follows:

"Los Angeles, Cal., 11–12–15.

" 'Ramona' to cost about $55,000.00.

"A limited number of investors—all to share alike.    Investors to receive their money back, dollar for dollar, first out of net profit.    California alone should pay investors back. Investors to receive 60% of net profit after receiving original investment back.    Investors to own 'Ramona' motion picture negative for entire world.    'Ramona' should make a minimum profit of $400,000.00 in the entire world.

"Respectfully—

"W. H. CLUNE.

"Received from A. K. Detwiler 2500.00, twenty-five hundred dollars to be applied towards the complete making of the moving picture production, 'Ramona.'    When 'Ramona' corporation is perfected, A. K. Detwiler receives his *pro rata* of stock; the same being based on the amount of money herein subscribed.

"Signed        W. H. CLUNE."

Generally speaking, the other contracts were made under similar circumstances and in like terms as the contract with the plaintiff.    But the Crisp contract (count 15), and two of the Poole contracts (amended count 13), did not contain the closing sentence, "when Ramona corporation is perfected," etc.    The effect of this omission, as to those contracts, will be considered later herein.    The expected cost of the picture, as stated in four of the contracts, was $55,000, and in the others was stated in varying sums, running from $40,000 up to $90,000.    In its findings the court determined that it was the true intent and meaning of the terms of each of these several contracts that the defendant would form and perfect a corporation, for the purpose of owning said motion picture film and the negative thereof and exhibiting prints of the same, and would cause stock in such corporation to be issued to the several persons with whom the contracts were made, proportionate to the amounts of money paid to the defendant by said investors respectively, as shown by the terms of the said several contracts.

The court further found that no part of the said several sums of money has been repaid to the plaintiff or his assignors, except certain small sums specified in the findings, and that defendant has never paid to any of said persons

any part of the net profits, but no net profits of the production or exhibition of said motion picture were made or derived by defendant before this action was begun; and defendant has never caused plaintiff or any of his assignors to own any interest in the Ramona picture negative. The proposed corporation never was formed.

The court found that the plaintiff and his assignors, respectively, have sustained damages in the several stated sums set forth in the findings, and, accordingly, caused to be entered a judgment against the defendant for the several amounts which the plaintiff was found to be entitled to recover, viz., the unpaid balances of moneys paid to the defendant.

Concerning the demand of the plaintiff arising out of his own contract with the defendant as set out in the first and second counts of the complaint, the court held that by reason of the effect of the judgment entered on June 4, 1918, in the above-mentioned action No. B–50316 which was pleaded by defendant as another and further defense to the plaintiff's action in the present case, the plaintiff could not recover on these counts of his complaint. Said action No. B–50316 was an action in which Detwiler as plaintiff sued Clune as defendant to enforce an attempted rescission by Detwiler of said contract of November 22, 1915. Judgment in that action having been entered in favor of the defendant Clune, he pleaded the same in bar of plaintiff's demand upon his contract in this action.

We will take up these appeals in their order, giving prior consideration to the case (Civil No. 4444) in which defendant Clune is appellant.

[1] The argument on behalf of appellant Clune is based chiefly upon the claim that the only obligation assumed by him in favor of Detwiler and his assignors was the obligation created by his promise that they should be repaid out of the net profits of the enterprise, and should further share in those profits, and upon the fact that there were no net profits. From these premises it is quite logically argued that the plaintiff has not established any right of recovery herein. The rule undoubtedly is, as stated by counsel, that where the performance of an agreement depends upon the happening of an event over which neither party has control, or upon the existence of a specific fund,

and where the contingent event does not occur or the fund is not realized, then the obligation is discharged. **[2]** And in less general terms, it must be accepted as true that in an action upon a contract providing for payment out of net profits of a venture, the complaint fails to state a cause of action unless it is alleged therein that such profits were in fact realized.

**[3]** Having thus maintained, at least to their own satisfaction, that no cause of action was alleged or proved in relation to the counts upon the express contracts, counsel for appellant Clune further contends that the plaintiff has likewise failed to establish any right of recovery upon the counts which rest in *assumpsit*. The contention is that since in each instance there was a specific contract, that contract limits the measure of damages that may be recovered. Without doubt the rule is as stated. (5 Cor. Jur., Assumpsit, sec. 91; *Palmer* v. *Guillow*, 224 Mass. 1 [112 N. E. 493].) And if it were true that the established right of action herein is only a right to recover damages for some failure in the performance of those contracts, then it would follow that the measure of damages is limited by the amount of loss sustained by the breach. But this rule is doubtless subject to the qualification, that where, by fault of the promisor, the consideration paid to him has wholly failed, the amount so paid may be recovered.

**[4]** The case for the plaintiff, as his counsel seek to maintain it, rests upon a construction of the contracts, wholly different from that of the defendant, and upon breaches of those contracts, amounting to an entire failure of the consideration upon which the money was received by defendant. It is the theory of the plaintiff that although in the contracts as written there was no direct statement that Clune promised and agreed to form a corporation for the ownership and exhibiting of the picture film, nevertheless, that the language used in the contracts, when taken together with the circumstances under which the contracts were made, was sufficient to establish the interpretation of the contracts for which the plaintiff contends. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, sec. 1636.) "A contract may be explained by refer-

ence to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.) "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (Civ. Code, sec. 1649.) "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; . . . " (Civ. Code, sec. 1654.)

In conformity with plaintiff's theory of the action as above indicated, plaintiff in each of the several counts of the complaint in which the several written contracts were set forth pleaded the intent and meaning of the terms of the contract as follows: "It was the true intent and meaning of the terms of said contract, and by its terms the said defendant agreed and undertook, that he would form and perfect a corporation for the purpose of owning said motion picture film and the negative thereof and exhibiting prints of the same, and would cause stock in such corporation to be issued to said (naming the 'investor') proportionate to the amount of money paid by said (naming the 'investor'), as above alleged, estimated at the time of such contract at (naming the alleged proportion) of the total amount of the stock of such corporation." The findings of the court affirm the truth of these allegations of the complaint.

The evidence received in support of the issues thus tendered (all of which were denied by the answer of the defendant) covers very fully the circumstances which led up to the execution of the contracts and the various transactions connected therewith. In July, 1915, defendant Clune had entered into an agreement with Little, Brown & Co. of Boston, publishers of the novel called "Ramona," whereby that company granted to Clune the motion picture rights appertaining to the picture (with an exception not material here), and granted to him the exclusive right, license, and privilege to make photographic reproductions of that book and the theme thereof, for the term of the copyright of such book, and with the privilege of exhibiting, licensing, and trafficking in motion pictures thereof

throughout the world. Defendant also owned a studio at Los Angeles equipped for the manufacture of motion picture negatives and films. In his testimony the defendant admitted that he intended that a corporation would be formed to handle the "Ramona" picture.

Proceeding under the rights thus obtained, defendant Clune commenced the manufacture of negatives and films of the proposed motion picture. In order to obtain some of the capital necessary for the enterprise he undertook to obtain from various persons such sums of money as they were willing to subscribe. It was in connection with this effort to obtain capital for the stated purpose that defendant Clune received from the plaintiff and his assignors the several sums of money stated in the complaint, and executed the several written contracts which are set forth in the complaint.

There is evidence quite sufficient to sustain the findings to which we have referred, concerning the meaning and intention of the contracts, as understood by the parties thereto. One or two examples will suffice. In conversation with Ahmed Abdullah, one of plaintiff's assignors, defendant Clune (so Abdullah testified) recommended to Abdullah to "buy some of this stock," stating that the picture would cost $50,000 or $55,000 at the most, and that "as soon as the picture completed we issue stock to the stockholders." Accordingly Abdullah invested by paying money to Clune and by receiving therefor the contract shown in the complaint. Further, Clune said to Abdullah that if Abdullah had any friends who would buy stock it was a good thing. Accordingly, Abdullah broached the matter to Flint, another of plaintiff's assignors. "He asked me to go and see Flint right after I bought my stock." The conditions under which the contracts were obtained, and the methods used by defendant to obtain the subscriptions, were clearly sufficient to impose upon him the responsibilities of a promoter in the formation of a proposed corporation. (*California-Calaveras Min. Co.* v. *Walls,* 170 Cal. 285 [149 Pac. 595].)

[5] The position in which defendant Clune placed himself, by receiving the money of the "investors" (so designated by him in the contracts, which he prepared), under the circumstances as shown by the evidence, obligated him

to retain in his hands, until the formation of the proposed corporation, the property rights which were to constitute the principal assets of that corporation. It was his duty to cause the corporation to be organized within a reasonable time, and to transfer to it the motion picture films and the right to use the same, as granted to him by Little, Brown & Co.

Instead of performing these obligations, the defendant by his voluntary acts and without consent of the "investors" made such performance impossible. He changed the plan and scope of the work so that the cost of the picture was increased far beyond the amounts of estimated costs which he had represented to the "investors." He transferred the picture rights as a whole to the Clune Film Producing Company, a corporation controlled by himself, in which the plaintiff and his assignors had no interest. The Clune Film Producing Company sold and transferred, to various purchasers, territorial rights to exhibit the Ramona picture in several portions of the United States. The subsequent attempted retransfer of the property by the Clune Film Producing Company to Clune was of course not effective to restore to him the rights which had been sold to others. We need not further extend the story of the defendant's conduct in relation to this business. Not only did he make useless the formation of the corporation which he had proposed to organize, but also he made it impossible for the "investors" to become, in any form, owners of the property and property rights for which they had paid their money to him. By this conduct he breached his contract, and in effect abandoned any attempt to perform the same.

The defendant repaid to the "investors" certain small sums, which he called "dividends." These were not dividends to them as stockholders of a corporation, for the corporation did not exist. They were not dividends or shares in profits of the Ramona picture business, for no such profits ever were made. These payments therefore were nothing else than a partial return of money which the defendant in fact owed, and of which he should have repaid all.

[6] The defendant did make a belated offer, to the plaintiff, to form a corporation with a capital stock of $100,000, in $1 shares, and cause to be issued to plaintiff 2,500 shares.

Under the conditions which then existed, this would not have been at all in compliance with the written agreement; nor would it have been of any value to the plaintiff, since the corporation would not have acquired the property which it was to have owned. It was, we conclude, clearly established that there was a total failure of the consideration upon which plaintiff and his assignors paid the several sums paid by them to the plaintiff. "In such a case, the law raises a promise on the part of the receiver of the money that he will pay it to the person entitled thereto, and that, too, without any previous request." (*Mahony v. Standard Gas Engine Co.*, 187 Cal. 399, 405 [202 Pac. 146, 149]; *Gray v. Ellis*, 164 Cal. 481 [129 Pac. 791].)

As has been noted above, the Crisp contract and two of the Poole contracts did not contain the sentence beginning, "When Ramona corporation is perfected," etc. Let it be assumed, therefore, that in those contracts there was no agreement to form a corporation. It remains true, however, that Crisp and Poole, as "investors," were to own an interest in the moving picture production "Ramona," no different in its nature from the interest therein of the other "investors." As to all of these investors it was equally true that they received no consideration for the money paid by them.

We pass now to Civil No. 4316, the appeal of the plaintiff. As a separate defense to this action the defendant alleged "that on or about the 26th day of February, 1917, the said plaintiff served upon the defendant a notice of rescission of said contract set out in paragraph 1 of the first cause of action in said complaint, and that thereafter, to-wit, on the 3d day of May, 1917, the said plaintiff commenced an action in the superior court of the state of California, in and for the county of Los Angeles, wherein A. K. Detwiler was plaintiff and W. H. Clune was defendant, being action No. B–50316, to enforce the said rescission of said contract. That thereafter said action was tried before said superior court, and after a trial thereof, judgment was duly entered therein on the 4th day of June, 1918, in favor of the defendant and against said plaintiff, which judgment was never appealed from, and the defendant pleads the judgment rendered in said action in bar of the further prosecution of this action by the said plain-

tiff.'' Upon the issue thus tendered the court made the following finding: "But by reason of the effect of the judgment entered on June 4, 1918, in the former action between plaintiff and defendant, No. B–50316, pleaded by defendant as another and further defense to the plaintiff's action in the present case, the particulars of which judgment are hereinafter more fully found, the defendant is not now indebted, and was not indebted at the beginning of this action, to the plaintiff in the sum of $2125.00, or any other sum, because of the matters hereinabove found or any of them, nor for money had or received by defendant on the 15th day of July, 1917, or at any other time, to the use or for the benefit of the plaintiff.'' The court further found as follows:. "Upon the matter pleaded in said answer touching the effect of the judgment in the former action of *A. K. Detwiler, Plaintiff,* vs. *W. H. Clune, Defendant,* No. B–50316 in the register of the clerk of this court, the court finds as follows: On or about the 2nd day of March, 1917, the plaintiff in the present action served upon the defendant in the present action a notice of rescission of the contract set out in the first cause of action in the present complaint—the contract of date November 22, 1915, between defendant and plaintiff—and afterwards, to wit, on the 3rd day of May, 1917, said plaintiff commenced said action No. B–50316 in this court, wherein he, said A. K. Detwiler, was plaintiff and said W. H. Clune was defendant, to enforce the said rescission of said contract. Thereafter said action was tried before said Superior Court, and after a trial thereof, judgment was duly entered therein on the 4th day of June, 1918, in favor of the defendant and against said plaintiff, which judgment has never been appealed from, and such judgment is a bar to the prosecution of the present action on the matters stated in the alleged first count or cause of action, and also the matters stated in the alleged second count or cause of action in the plaintiff's complaint in the present action, which counts respectively purport to allege causes of action in favor of plaintiff arising out of transactions had by him personally with the defendant; but such bar does not extend to or affect the plaintiff's other causes of action alleged in his pleadings here, wherein he sues as the assignee of other persons.''

At the trial of this action the defendant offered in evidence the judgment-roll in said action B–50316. To this offer objections were made by the plaintiff, which objections were overruled, and the judgment-roll (except certain omitted portions which both parties agreed were immaterial in the present case) was received in evidence. The plaintiff's objections were "that there is no sufficient plea here of a former adjudication—no special plea, that is, to justify the production or the introduction of the evidence. . . . There is no showing at all in this answer of any identity of issues. The mere fact that there was an action for rescission of the contract is no proof at all that issues were made or determined in that case, which are material to the present action.

"It appears here from the findings and decision offered in evidence, signed on the 29th day of May, 1918,—

" 'That the written contract set out in the answer and in these findings is still in full force and effect; and that the plaintiff is entitled to take nothing by his said action.' That is, his action for rescission. We claim that a judgment which denied a rescission does not work an estoppel in the present case on any issue.

"It appears from the documents offered that the suit proceeded for rescission on the ground of alleged fraud by defendant in inducing the plaintiff in that suit, by false representations, to enter into it (the contract); and fraud is not the basis of the present action at all.

"That the judgment-roll offered in evidence is incompetent, irrelevant and immaterial, constitutes no defense to the present action; that if there are any issues in the present case which are claimed by defendant here to have been involved in that trial and determined in that case, the issues are not specified in his plea."

In its conclusions of law in the present action the court determined that "by reason of the bar of the judgment in the former action of *Detwiler* v. *Clune*, No. B–50316, the plaintiff is not entitled to recover anything because of the matters alleged in the first and second counts or causes of action, respectively, alleged in his complaint." The judgment followed this "conclusion of law." It is from this part of the judgment that the plaintiff appeals.

In the former action B–50316 the plaintiff sought to obtain a decree to enforce an attempted rescission by him of the same contract which is the subject of the first and second counts of the complaint in the present action. Plaintiff sought to rescind upon the ground that the defendant had obtained plaintiff's subscription and money by means of sundry promises and representations, of which certain of the representations of fact were false, and by the defendant well known to be false, and that the representations and promises were made for the purpose of cheating and defrauding the plaintiff, and without any intention of the defendant to complete or perform the said promises. A total failure of performance by defendant was alleged. The plaintiff sought to obtain a decree declaring the contract canceled and rescinded and further to recover judgment against the defendant for the sum of $2,500 subscribed and paid by him, etc. The answer of the defendant in that action, while admitting the making of the contract and the payment of the money by the defendant, denied very fully the allegations which constituted the gist of the action in relation to the right of rescission. There was also a plea of laches in serving the notice of rescission and also in relation to the time of commencement of the action to enforce the same. Pursuant to its decision in favor of the defendant upon those issues (including the defense of laches), the court as conclusions of law therefrom determined "that the written contract set out in the answer and in these findings is still in full force and effect, and the plaintiff is entitled to take nothing by his said action." Thereupon judgment was entered that the plaintiff take nothing and that the defendant recover his costs.

[7] Appellant Detwiler contends that the court erred in overruling his objections to the judgment-roll in action B–50316 when offered as evidence in this action; that the difference in the nature of the two actions is such that the judgment rendered in the first action could not constitute a bar to the second action; that as to any matters of estoppel created by reason of the decision and judgment in the former case, such matters of estoppel were not pleaded herein by the defendant in such manner as to entitle him to make proof thereof.

There is a clear difference between the effect of a judgment as a bar to a subsequent action of an identical nature, and the effect of a decision upon issues in controversy when such decision is pleaded, not as a bar to a subsequent action of an identical nature, but only as an estoppel against further litigation of those issues. "In the application of the doctrine of *res judicata* there is, sometimes, a distinction to be made concerning the effect of the judgment in a former action. Thus (1) a former judgment may be conclusive evidence that no cause of action exists. That is to say, it may be offered not as estoppel to proof of any fact, but as proof of the nonexistence of a cause of action at all. Or (2) treated from the standpoint of its use as a piece of evidence, it may be produced when specifically pleaded as an estoppel, as was done in the instant case, as evidence of some material fact in the cause of action on trial, the truth of which both parties are estopped from denying. In the latter case the judgment gives an indefinite life and irrebuttable probative force to any fact found by the judgment to be true. The latter is the effect produced when the controversy is again raised in another suit upon a different cause of action." (*Estate of Clark*, 190 Cal. 354, 361 [212 Pac. 622, 625].) "We should, perhaps, in this connection call attention to the distinction between a judgment operating by way of estoppel in a later action upon a different cause of action and one operating by way of bar against a second action upon the same cause of action. If in this case the other action had been upon the same cause of action as the present, that is, had been an action to abate the defendant's obstructions, a judgment for the defendant upon the merits would have been a bar to a second action for the same purpose, regardless of what different or various issues may or may not have been presented. But, as we are given to understand, the other action was not the same as the present. The judgment in it can, therefore, not operate as a bar to the present action, but at most only as a judicial determination binding upon the parties of issues again involved between them. In order that it may so operate, it must of necessity appear that it did in fact determine those issues." (*Horton* v. *Goodenough*, 184 Cal. 451, 461 [194 Pac. 34].)

—

[8] In the case at bar it appears that the former action was pleaded generally as in bar of the present action, and was so considered and sustained by the superior court (as to counts one and two of the complaint herein), in its decision in this action. Having in mind the distinctions noted in the next preceding paragraph, it is necessary to determine whether the cause of action in the action No. B–50316 was the same as the causes of action against which it has been interposed in the case at bar. Of course, in finding our answer to the question, the fact that one action was called an action to declare and enforce a rescission of the contract, while the other is nominally an action for damages, or nominally for recovery of money paid upon a consideration which has failed, is not a fact of very much importance. The gist, or gravamen, or substance (as variously we may try to designate the thought), of the several causes of action, must be ascertained and compared.

In the former action the right which the plaintiff sought to enforce was the right to have entered a decree of a court of equity, establishing the ultimate fact that for good and sufficient reasons the plaintiff had rescinded and put an end to the contract. And by way of further relief he sought to compel repayment of his money. Primarily, the right so claimed was based upon grounds which, if sufficient, would have nullified the contract as one voidable from its beginning. Appellant Detwiler now argues, in effect, that the alleged existence of fraud in the inception of the contract, whereby the contract was, at the election of the plaintiff, subject to annulment, constituted the entire substance of that action. But there was something more. A party to a contract may also rescind for failure of consideration, "if such consideration, before it is rendered to him, fails in a material respect, from any cause." (Civ. Code, sec. 1689.) In action B–50316 the plaintiff relied upon this failure of consideration, and alleged facts showing the same, although he did also allege and rely upon the alleged fraudulent conduct and purpose of the defendant. Upon the issues thus presented the court might have affirmed the plaintiff's right of rescission even though at the same time the charges of fraud were not sustained. The court had power to grant to the plaintiff "any relief consistent with the case made by the complaint and embraced within

the issue.'' (Code Civ. Proc., sec. 580.)    In that action however—as inspection of the judgment-roll very plainly shows —the court found against the plaintiff not only upon the charges of fraudulent representations and the charges of promises made by defendant ''without any intention upon his part to keep or perform the same.'' The court also found in favor of the defendant upon the principal issues relating to the demands of plaintiff which rested upon the alleged failure of consideration. Placing its decision upon all of these grounds, the court determined that the written contract was ''still in full force and effect,'' and adjudged that the plaintiff take nothing.

The judgment in that action having thus determined that the contract remained in force, it follows that Detwiler could maintain an action to recover damages, if any such accrued to him by reason of breaches occurring subsequent to the date of that judgment. The present action, however, is not an action to recover on account of any such subsequent breaches of the contract. The plaintiff here seeks to recover, on the ground of failure of consideration, the money paid by him. But, as we have been, that failure of consideration, assuming that it occurred as found by the court from the testimony received in this action, is the same failure of consideration alleged in the former action, the existence of which is negatived by the decision and judgment in that action. We conclude that the court did not err in overruling the objections to the judgment-roll as evidence, or in holding that the plaintiff's right of action herein, as to said counts one and two, is barred by the former judgment.

The judgment is affirmed.

Hahn, J., *pro tem.*, and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 26, 1926, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1926.

Conrey, J., *pro tem.*, did not participate.