[Civ. No. 4641.   Fourth Dist.   Feb. 24, 1954.]

C. A. UNRUH et al., Respondents, v. BRYAN SMITH et al., Appellants.

Mack & Bianco and D. Bianco for Appellants.

Baker, Palmer & Wall for Respondents.

MUSSELL, J.—Defendants appeal from a judgment for plaintiffs in an action for damages for breach of the following contract:

"This agreement entered into Aug. 10, 1950 between Bryan Smith Farms and C. A. Unruh & Howard J. Miller.

"C. A. Unruh & Howard J. Miller agrees to grow 42 acres of cucumbers on their ranch located near the Kern County Airport and to harvest and deliver the same to the Bryan Smith Farms' packing house in Edison.

"Bryan Smith Farms agrees to advance cucumber seed at the stipulated price of $1.20 per pound which will be deducted from the sale of the cucumbers, furnish planting sled, and some advise in regards to growing and harvesting.

"Bryan Smith Farms also agrees to process, ship, and sell said cucumbers at a reasonable going rate to be determined by the cost of handling and materials at the time of harvest.

"Bryan Smith Farms agrees to rent trailers for harvesting to above mentioned growers for a reasonable going rate. All charges to be deducted from sale of cucumbers, balance of revenue from the sale of said cucumbers to be paid said growers at the time collections are made from sale of said cucumbers.

(Signatures)"

Plaintiffs allege that pursuant to this contract they planted, cultivated and brought to maturity on their land 50,000 lugs of cucumbers; that they at all times performed all of the stipulations, conditions and agreements on their part to be performed at the time and in the manner specified in the contract; that the reasonable value of the cucumbers at the time the crop was ready for marketing, over and under the cost of processing, shipping and selling was 50 cents per lug; that the defendants failed and refused to perform the contract; that plaintiffs were dependent upon defendants to take care of such crop and were unable to market it because of defendants' breach of the contract, all to their damage in the sum of $25,000.

Defendants admitted the execution of the contract, denied the other material allegations of the complaint and cross-complained for the sum of $1,925.49 for unpaid advances.

During the trial the court permitted plaintiffs to amend their complaint to conform to the proof and in the amendment plaintiffs alleged that they cultivated and brought to maturity in excess of 60,000 lugs of cucumbers; that plaintiffs picked and delivered to defendants 10,024 lugs and that defendants refused to process, ship or sell the balance of 50,000 lugs and refused to rent trailers to plaintiffs for the harvesting of said balance; that as a result of defendants' refusal to process, ship and sell said cucumbers plaintiffs were unable to deliver 50,000 lugs so grown and were unable to sell or dispose of the same at the time said cucumbers were ready for market and said cucumbers were left on the vines and became overripe, spoiled and unmarketable; that plain-

tiffs performed all of the stipulations, conditions and agreements stated in said contract to be performed on their part at the time and in the manner specified, except as prevented by the failure of defendants to process, ship and sell the said crop.

## Evidence

Plaintiffs were tenants in possession of a 42-acre ranch in Kern County and the defendant Bryan Smith operated a packing house at Edison in said county. On August 10, 1950, the parties entered into the contract (prepared by defendants) hereinbefore set forth and thereafter plaintiffs, pursuant to the agreement, planted, cultivated and brought to maturity on said land a crop of cucumbers which matured at the average rate of 800 main lugs per day from October 17, 1950, to December 15, 1950, or a total of not less than 48,000 main lugs.

There was evidence that in order to produce a maximum yield of cucumbers, regular and continuous picking is required during the harvest period; that if so picked the acreage planted by the plaintiffs in 1950 with reasonable certainty would have produced marketable cucumbers for a period of at least eight weeks, from October 17 to December 15, 1950, in an amount not less than 54,000 lugs of marketable, good grade cucumbers; that during said period there were 52 shipping days, not including Sundays and holidays; that during the first 23 shipping days, from October 17 to November 12, 1950, inclusive, there were available for processing and sale sufficient cucumbers from said crop to have packed out 10,000 lugs of good grade, marketable cucumbers, after making allowance for culls and discards, in addition to the cucumbers actually processed and sold by the defendants; and that during the last 29 shipping days during said period, from November 12 to December 15, 1950, there would have been available with reasonable certainty, if the cucumbers had been regularly picked, 24,000 lugs of good grade, marketable cucumbers, after making allowance for culls and discards, in addition to those actually processed and sold by the defendants.

Plaintiff Unruh testified that on or about October 5, 1950, the cucumber plants matured; that he made several trips to defendants' shed and ranch and told them that the plants were matured and that they should start picking; that defendant Smith stated that "he didn't figure there was enough

there to pay to go in and start picking, and he did tell us that he wasn't set up for them at that time; that he would be set up in a week or ten days''; that defendants' foreman informed plaintiffs that they had nothing to worry about and that they would have to wait; that he would start as soon as he got the machinery up; that the picking was commenced on or about October 18, 1950; that on one occasion at about the middle of the season plaintiffs delivered to defendants four trailer loads of cucumbers which were allowed to become soft and overripe; that when plaintiffs started, they were picking four or five loads a day; that Smith would stop them and say ''don't bring any more; that is all; that is enough for today''; that Smith told him not to worry about it that in a couple of days or so he would put in a big crew and get over the field but that Smith sent in a crew of pickers on one day only; that it was necessary to go over the field every two or three days and pick the large cucumbers off in order to keep the vines alive; that at the beginning of the season trailers were available but as the season went on, when plaintiffs wanted trailers they would not be available; that there were ''quite a few times when there were not enough trailers; that he could not give an estimate of the average times because there were so many times he went there to get trailers; that Smith was 'running tomatoes' and he did not stop and run cucumbers''; that Smith stated that he was harvesting tomatoes and needed his trailers; that ''I just kept telling him that we just had to get the trailers and had to pick faster than we were picking and he said he couldn't just handle it''; that the cucumbers were ready for picking on October 10, 1950, and that it was on October 18, 1950, when he got the first trailers; that in the latter part of the season when the cucumbers were too large Smith told plaintiff to pick all that he could; that it was then too late as the cucumbers were too large.

There was evidence that the price of handling cucumbers was 80 cents per lug and marketing reports admitted in evidence by stipulation showed that from October 17, 1950, to November 12, 1950, the average market price of good grade cucumbers was the sum of $1.19 per lug and that from November 13, 1950, to December 15, 1950, the average price was $1.98. There was evidence that the reasonable cost of processing and shipping (not including freight) was 90 cents per lug, including 10 cents profit to defendants; that the reasonable cost of picking and hauling was 10 cents per

lug and that the average freight cost was 5 cents, making a total of $1.05 per lug.

The trial court found generally in accordance with the foregoing evidence and further found that "the contract between the parties required the defendant to furnish 'some advice in regards to growing and harvesting'; that such 'advice' as to harvesting and statements to plaintiffs as to when they should pick and when they should not pick cucumbers were constantly and repeatedly given and made by defendant to plaintiffs throughout the harvest period and that plaintiff relied on said advice, statements and representations of defendant and did not seek other outlets except small casual sales; that by reason of such advice, plaintiffs were prevented from picking cucumbers for sale as fast as the maturity of the crop and the state of the market justified; that the reasonable going rate for processing and packing cucumbers of the type of pack contemplated by the parties was 90 cents per lug; that defendant charged $1.10 per lug for processing and packing; that by charging the same against the cost of the lug before offering it for sale, the defendant by his own act prevented the marketing of large quantities of cucumbers . . . and made impossible an exact determination by the court of the quantity of cucumbers that would have been sold if the reasonable rate for processing had been charged; that during the 1950 season there was a market available for plaintiffs' cucumbers at the prices set forth in the market reports in evidence; that defendants did not timely account to plaintiffs as to the result of the various sales of cucumbers or any of them, but instead failed and neglected to make any accounting of the returns from the sale of cucumbers handled until after this action was filed; that until the harvest season was over, plaintiffs did not know that said cucumbers were not being sold at a substantial profit, and were deprived of any opportunity to protect themselves in the market by seeking other outlets and purchasers; that plaintiffs at all times during said crop season were ready, willing and able to perform all of the terms and conditions of their contract with defendants, both express and implied, and did perform the same in full, except as prevented by the defendants; but that to the extent found herein the plaintiffs were prevented from performing said contract by reason of defendants' advice to the plaintiffs not to pick, and by the defendants' failure and refusal to process,

ship and sell said cucumbers at a reasonable going rate as required by the contract.'' The court further found that the reasonable cost to produce the extra fancy lug as actually packed by the defendant was $1.00 per lug; that the defendants actually processed and sold from plaintiffs' crop 10,024 lugs for a net return to plaintiffs of $1,224.06, and plaintiffs were entitled to receive an additional 10 cents per lug, the difference between the processing cost actually charged to the plaintiffs and the reasonable charge therefor, or a total of $1,002.40; that the defendant improperly charged double commissions on certain sales and plaintiffs were entitled to $499.29 for such sums; that the defendants improperly charged plaintiffs for freight, commission, storage, drayage and processing on cucumbers shipped without destination, consignment or sale in the sum of $906.53; that of the additional 10,000 lugs available during the first marketing period, the market would have taken had they been offered for sale 8,000 lugs at $1.19 per lug, which on the basis of $1.05 cost per lug and 12 cents commission, would have returned to the plaintiffs a net of 2 cents per lug, or a net of $160; that of the 24,000 lugs available during the second marketing period, the market would have taken, had they been offered for sale, 20,000 lugs at $1.98 per lug, which on the basis of $1.05 cost per lug and 20 cents commission, would have returned to the plaintiffs a net of 73 cents per lug, or a total of $14,600; that the defendants were entitled to an offset on their counterclaim of $1,925.49 and that the plaintiffs were entitled to recover a net total of $15,242.73.

Appellants first contend that the findings are not responsive to the pleadings. They argue in this connection that the cause of action made out by the pleadings was full performance; that plaintiffs' allegation was that pursuant to the contract they agreed to plant, harvest and deliver 42 acres of cucumbers to the defendants' packing house; that pursuant to the contract, they brought to maturity 50,000 lugs of cucumbers and performed all of the stipulations and agreements on their part to be performed and in the manner specified in the contract; that the primary and only obligation imposed on the plaintiffs by the contract was that they were to ''harvest and deliver'' the cucumbers; that it was only such cucumbers as were by plaintiffs harvested and delivered to the shed of the defendants that the defendants were required to process, ship and sell and that this was a condition precedent to the obligation, if any, of the de-

fendants. However, the complaint was amended to conform to the proof that the market would have accepted at least 20,000 lugs of cucumbers in addition to those sold by defendants, if defendants had not refused and neglected to rent a sufficient number of trailers to plaintiffs and had not refused to process and ship at least 20,000 additional lugs. The amendment to conform to the proof sufficiently alleged a prevention of performance of the contract by the defendants. It is alleged in the complaint that plaintiffs were dependent upon the defendants to take their said crop and were unable to market the same by reason of defendants' breach of the contract. While it is true that plaintiffs did not actually deliver the 20,000 lugs in question, the record supports the inference that defendants would not have processed, shipped and sold them if such delivery had been made. ■ Prevention of performance by the promisee is equivalent to performance by the promisor. (*Crawford* v. *Pioneer Box & Lumber Co.*, 105 Cal.App. 760, 769 [288 P. 694]; *Sexton* v. *Richardson*, 6 Cal.App. 459 [92 P. 395].) ■ Defendants could not by refusing to accept the cucumbers claim the benefit of such prevention and thereby prevent plaintiffs from obtaining damages for breach of the contract. ■ A party to a contract cannot take advantage of his own act or omission to escape liability thereon. Where a party to a contract prevents the fulfillment of a condition or its performance by the adverse party, he cannot rely on such condition to defeat his liability. (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 371 [210 P.2d 757].)

Appellants next argue that the court erred in permitting plaintiffs to amend their complaint to conform to the proof. We find no prejudicial error in the order permitting the amendment. As was said in *Burrows* v. *Burrows,* 18 Cal.App. 2d 275, 279 [63 P.2d 1135]:

"Under the provisions of section 470 of the Code of Civil Procedure the trial court is invested with discretionary power to permit and even to order the pleadings of the parties to be amended at any stage of the trial of the cause, and even after its submission, so as to make such pleadings conform to the proofs; and it has been uniformly held that this discretion will not be interfered with upon appeal except in cases of its manifest abuse."

It does not appear that defendants were prejudiced by the amendment. The action was for breach of contract and

438

the cause of action was not changed by the amendment. ■ Amendments not substantially changing the cause of action or defense may be made to conform pleadings with proof at any stage of the trial. (*Richter* v. *Adams*, 19 Cal. App.2d 572, 577 [66 P.2d 226].)

It is next contended that the implied findings that the advice of the defendants to the plaintiffs when to and when not to pick was faulty is unsupported by the evidence. We cannot agree with this contention. The questioned finding was that the ''advice'' given by defendants as to the harvesting and statements to plaintiffs as to when they should or should not pick cucumbers was relied upon by the plaintiffs and that they did not, therefore, seek other outlets for their crop, and that by reason of such advice they were prevented from offering the cucumbers for sale as far as the maturity of the crop and the state of the market justified. Some of the ''advice'' given and statements made by defendants were in the nature of directions to plaintiffs as to when the cucumbers were to be delivered and when they would be accepted for processing and sale by defendants and plaintiffs were by reason thereof unable to deliver a large portion of their crop to defendants' packing house.

■ Appellants further argue that the finding that 8,000 lugs of cucumbers could have been sold during the first harvesting period at an average of $1.19 per lug and that 20,000 lugs could have been sold during the second harvesting period at an average of $1.98 per lug is based on speculation and conjecture. However, there is substantial evidence as to the number of lugs of cucumbers available for processing, packing and shipping during the entire season, the market price and the cost of processing, packing and shipping, from which the trial court estimated the amount of damage suffered by plaintiffs. They were entitled to recover for the cucumbers which by the acts of defendants they were prevented from shipping. (*Rice* v. *Whitmore*, 74 Cal. 619, 620 [16 P. 501, 5 Am.St.Rep. 479].) Where, as here, the prospective profits were the natural and direct consequences of the breach of the contract by defendants they may not wholly escape on account of the difficulties of devising a perfect measure of damages which their own wrong has produced. (*Hoag* v. *Jenan*, 86 Cal.App.2d 556, 562 [195 P.2d 451].)

Finally it is argued by appellants that the court improperly allowed offsets to the counterclaim. We find no merit in this

contention. Appellants, by their cross-complaint, set up that there was an offset of $1,925.49. The court properly considered the excess processing charges, commission and freight in computing the damage suffered by plaintiffs in making a full settlement of the controversy.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.