[Civ. No. 6348. Fourth Dist. Feb. 21, 1961.]

GLENN RAINS, Respondent, v. LEE ROY ARNETT, Appellant.

Wendell V. Harris for Appellant.

Thomas M. Eckhardt for Respondent.

GRIFFIN, P. J.—In this action for money had and received, plaintiff-respondent seeks judgment against defendant-appellant for $4,526.30 based on a writing designated lease agreement, dated June 27, 1957, whereby plaintiff leased from defendant, for a 90-day period, subsequently extended by an oral agreement, a Mack tractor with semitrailer and a Peterbilt tractor with semitrailer, to be used in transporting goods "for hire." It provided:

"The rental payment for the leased equipment shall be made on the following basis:

Gross Revenue from hauling, less:
 25% drivers' commissions (wages)
 15% commission
 3½% B/E and P.U.C. Taxes
 Helpers' wages
 Fuel and repairs
 Trip expenses
 Insurance
 Licenses and taxes
 Loan payments"

It also contained a provision that it might be renewed at the option of the plaintiff.

It appears from plaintiff's testimony that during the course of the lease, major and unusual repairs and modifications were required to be made to, and new tires were furnished for, lessor's equipment. Lessor had neither cash nor credit to make the repairs. He discussed his problem with the plaintiff and plaintiff orally agreed to pay for the repairs and permit defendant to charge the same to plaintiff's account and defendant would thereafter be indebted to plaintiff in such amount, and that plaintiff would retain possession and use of the trucks and equipment until the net income from their operation was sufficient to pay these bills. Plaintiff testified that defendant assured plaintiff that he would repay plaintiff for any unpaid balance of the money advanced for these unusual repairs, out of the net income from the lease operation. At another place in the reporter's transcript, he testified defendant said he would reimburse plaintiff for the repairs. This conversation constituted a part of the claimed subsequent oral agreement. Plaintiff testified that at the expiration of the 90-day lease period the net income was not sufficient to pay the bills. It appears that after the 90-day period, defendant went to plaintiff's place of business and surreptitiously took back the Mack truck and trailer and endeavored to take back the Peterbilt tractor and found it was "working out of town." Later, in October 1957, he recovered the Peterbilt tractor in the same manner. One trailer was repossessed by a finance company and plaintiff repurchased it from them. Plaintiff tendered the trailer to defendant upon payment to him of the cost of repurchase, but defendant refused to pay.

Plaintiff testified that there is a custom in the trucking busi-

ness that when a truck is leased from another, the lessor pays for all major repair work as contrasted with minor repair work. Defendant testified otherwise. Plaintiff testified that the body of one trailer was shortened to facilitate lumber hauling and it was orally agreed that the cost of this alteration should be paid for out of income from the operation of the truck, and plaintiff was assured by defendant that the truck would remain with plaintiff until the necessary expenditures had been paid for out of income. Defendant claimed that plaintiff orally agreed to lease the trucks and pay all expenses out of the revenue. He testified there was no agreement that he would repay plaintiff the balance in the event the income was less than the expenses and that there was nothing said about losing money on the operation; that there was a first partial accounting in September 1957 and another in November. One of them showed defendant owed plaintiff $3,316.10, but it was claimed that the accounting was not complete. Defendant testified that he never knew whether the expenses exceeded the revenue and claimed plaintiff made no payments on the trucks and trailers, as agreed upon, and as a result one trailer was repossessed; that a Trailmobile Van, not leased to plaintiff, was about to be repossessed from defendant and plaintiff paid $500 of the balance owing on the trailer to save it from being repossessed. Later this van trailer was also repossessed. Defendant testified that plaintiff's payment of $500 was voluntary and for plaintiff's benefit and that defendant derived no benefit therefrom. It appears that prior to the leasing of defendant's equipment to plaintiff, defendant was delinquent in payments on several of his trucks and trailers and an attachment had been levied on at least one of them. Plaintiff produced a check made payable to defendant on August 7, 1957, in the sum of $175, which defendant took to the bank and with which he made a payment on the equipment. Another such check for $374.17 was produced showing a similar payment on August 16, but the account was then still in arrears. Plaintiff advanced defendant $200 on account of the lease contract during the early period of the lease and authorized a credit for $800 in parts which were placed on another truck belonging to defendant. Plaintiff's accounts, showing revenue from use of defendant's trucks and costs in connection therewith were received in evidence and explained by his accountant. A more complete accounting was furnished defendant on September 30, 1957, and expenses exceeded the revenue by $3,316 at that time. A copy of this account was given to the

defendant and defendant demanded verification invoices. Plaintiff testified that he had these invoices available but defendant never came back to see them.

Plaintiff further testified that he did authorize defendant to charge to him certain parts placed on leased trucks but never on defendant's own trucks which were not leased, and that defendant never had money coming to him because the expenses exceeded the income from the trucks and that plaintiff told defendant that if he would leave the trucks with him for another 90 days he could probably "get him out of the red"; and that at one time defendant asked plaintiff to figure up what he owed him and he would pay him. It appears that defendant's public utility permit had been suspended over some tax matter about the time of these lease negotiations and the permit was restored in July 1957. Defendant was not authorized to haul or subhaul for his own account during this suspension, but he was authorized to lease his equipment to other licensed truck contractors.

Certain charges and receipts from hauls, evidenced by plaintiff's files, were recapitulated in a general statement showing gross revenue from June to October, in the amount of $11,570.44, less deductions for commission, taxes, wages, insurance and fuel in the sum of $9,058.15. There was there indicated a further offset of $6,848.35 for cash payments to defendant, repairs, trip expenses, etc., indicating a balance due plaintiff in the sum of $4,336.06.

The trial court found generally that defendant was indebted to plaintiff in the sum of $4,074.12 and gave judgment accordingly.

On this appeal, defendant claims that an action on the common count for money had and received will not lie for an accounting between a lessor and lessee of trucking equipment based on a written lease followed by an executed oral agreement. (Citing such authority as *Mains* v. *City Title Insurance Co.*, 34 Cal.2d 580 [212 P.2d 873] ; 5 Cal.Jur.2d, Assumpsit, § 19, pp. 552 et seq.)

It is true that there was a writing executed by the parties which in some respects constituted a part of the agreement between the parties. It was sketchy and lacked many of the provisions contemplated by the parties, particularly as to who was to pay for major repairs on the trucks while they were in the service of plaintiff. Considerable evidence was produced as to the custom of the trade in this respect, as heretofore mentioned. The court admitted additional evidence regarding

a subsequent oral agreement or arrangement of the parties in this respect. The court concluded that it was necessary to consider this entire evidence in order to properly construe the intention of the parties and to affix liability for these items.

The original agreement did provide that fuel and repairs to these trucks, paid for by plaintiff, should be deducted from the gross income. There was testimony that the usual custom was for the lessee to pay for minor repairs, but lessor would be obligated to pay for major repairs, in the absence of any particular agreement on the subject.

Under any conditions, it is apparent that the parties agreed that there would be an accounting, at some period, as to the gross revenue and charges made against it, and that plaintiff would be obligated to pay to defendant the difference, if there was any. Here, it does not appear from either the written agreement or the oral agreement what would happen in case the repairs, etc., exceeded the income. We will assume, as the trial court did, that the parties intended and agreed that in case of loss this burden would be assumed by the lessor and not by the lessee and that these advances were made at the request of and for the benefit of defendant lessor. In nearly all instances, in case of major repairs, plaintiff brought the necessity of such repairs to the attention of the defendant. Defendant had no money with which to finance the repairs. Apparently it was agreed that plaintiff would make the repairs and deduct that amount from the income or that defendant would repay plaintiff for them.

There was testimony by plaintiff that, as to these repairs and conversion, defendant orally agreed that all trucks and equipment could be used by plaintiff, regardless of the 90-day written agreement, until these bills had been paid by their income. Apparently defendant did not carry out this promise and took some of the equipment back prior to this time.

The general rule is that where an action is based upon a special contract, a common count will not support the action, but the plaintiff must declare specially on the contract. (*O'Connor* v. *Dingley,* 26 Cal. 11; *Roche* v. *Baldwin,* 135 Cal. 522 [65 P. 459, 67 P. 903].) One recognized exception to the general rule arises when a party to a special contract has performed his part, and nothing remains to be performed but the payment of the money due him on the contract. (*Castagnino* v. *Balletta,* 82 Cal. 250 [23 P. 127].)

Another exception to the general rule arises where the contract has been deviated from or modified by consent of

the parties, and the plaintiff has fully performed. (*De Boom* v. *Priestly*, 1 Cal. 206; *Reynolds* v. *Jourdan*, 6 Cal. 108.)

A further exception is recognized where complete performance of the express contract is prevented by the defendant, or the defendant by his acts repudiates the contract. Under these circumstances the plaintiff may proceed on the common counts. (5 Cal.Jur.2d § 12, p. 541, and cases cited.) Limitations upon availability of assumpsit arise, however, where the relation of the parties is such as to require an accounting to establish liabilities such as a partnership business, until the partnership accounts have been settled. (*Fisher* v. *Sweet*, 67 Cal. 228 [7 P. 657].) Where one pays out money for the benefit of another, at the latter's request, the count for money paid, laid out, and expended will lie, and the law raises an implied promise and a legal liability on the part of the defendant to pay immediately on demand. (*Kraner* v. *Halsey*, 82 Cal. 209 [22 P. 1137]; *Provident etc. Assn.* v. *Davis*, 143 Cal. 253 [76 P. 1034].) Technically, an action for money had and received lies in cases where one person has in his possession money which in equity and good conscience he ought to pay over to another. (5 Cal.Jur.2d § 16, p. 548.)

Under this rule, no recovery for money had and received can be had against a defendant who never received any part of the money or equivalent thing sued for. (*Whittier* v. *Home Savings Bank*, 161 Cal. 311 [119 P. 92].)

The complaint does allege that defendant received from plaintiff the sum of $4,526.30 for the use of the defendant and that said sum is due and owing from defendant. The finding of the court is that defendant became indebted to plaintiff in said sum.

In the instant action it does not affirmatively appear that an action on the contract would have afforded the proper relief. Some of the advances or payments made by plaintiff were not based on the written agreement. While the facts produced indicate that the more appropriate common count would have been to allege money paid out for the benefit of defendant and at his request, we are convinced that a reversal of the judgment on this technical defense would be of no avail to defendant or result in a different judgment than that rendered. This conclusion is fortified by the action taken in *Ackley* v. *Prime*, 99 Cal.App. 534, 541 [278 P. 932], where the contention on appeal was that defendant's liability, if any, was upon a written contract and plaintiff's action should have been founded on it rather than on a money had and received

count. There the court held: ". . . a judgment for plaintiff on the common count will not be reversed on the ground that there is an executory written contract between the parties where the result would not be changed by sending the case back for a retrial on other pleadings. [Citation.]"

See also *Culver* v. *Newhart*, 18 Cal.App. 614 [123 P. 975], where an indebtedness was pleaded as due on a mutual, open and current account and the evidence may have shown an account stated. The court said the defendant was not actually misled thereby to his prejudice. In 2 Stanbury, California Trial and Appellate Practice, § 1054, p. 265, the general question is discussed, citing Code of Civil Procedure, sections 469 and 470, and stating:

"Except that *total* variance, whereby a party's proof is entirely different from his pleading, has not been permitted, the key to any problem of variance is the question of prejudice. If the pleading could be amended to embrace the variant proof, and the appellant is not misled to his prejudice, variance is not material." See also *Locke* v. *Duchesnay*, 84 Cal. App. 448 [258 P. 418]. We conclude that under the circumstances and the facts of this case, and under the finding of the trial court and the evidence produced, the judgment based upon the common count as pleaded was justified and defendant was not prejudiced by the form of pleading.

The records show that at the close of the trial, after objection had been made to the reception of evidence on account of the money had and received count, counsel for plaintiff moved the court to amend the complaint for the purpose of showing a second cause of action "for the purpose of pleading the alternative theory of damage equivalent to the alternate account." The court refused the request under the belief that the allegation of the complaint was sufficient to make the award.

 Next, defendant contends the payment of $500 made by plaintiff on the Trailmobile Van was a voluntary payment and cannot be recovered from defendant. (Citing *Major-Blakeney Corp.* v. *Jenkins*, 121 Cal.App.2d 325 [263 P.2d 655].) The evidence shows that plaintiff made a payment of $500 on this van (not part of the leased equipment) to save it from repossession. Plaintiff went with defendant to Los Angeles and apparently paid the money, at defendant's instigation or request. This item was properly considered in rendering the judgment as being money paid out on behalf of defendant and at defendant's request.

■ Defendant also claims a set of side racks was separately purchased by him and placed on the Trailmobile flat and was not purchased under the contract for the trailer; that the side racks were valued at $500 and were appropriated by plaintiff and that credit should have been allowed to him in this sum. Plaintiff claims the side racks were on the trailer when it was repossessed by the finance company and when he repurchased it; that he never knew they were supposed to have been separately purchased. Plaintiff, on the witness stand, said that if defendant could prove this fact he would, right then, give the racks back to him. Apparently there was no further proof on the subject and the trial court properly refused the credit.

Defendant next argues that he had an equity of $2,300 in the Trailmobile flat repossessed by the finance company and that since plaintiff agreed to make the necessary payments on it and failed to do so, the truck was lost to defendant and he should have credit for this sum. Plaintiff denies any agreement to make payments on the purchase price of any of defendant's trucks. There is evidence that defendant was already delinquent in some payments when the lease was made. All this evidence merely creates a conflict and that conflict has been resolved against the defendant.

■ Defendant submits that the written contract was uncertain because there was no certainty that the net profits for the use of the trucks would exceed the cost of repairs and therefore it could be terminated by either party at any time; that the court made a different contract from what the parties themselves made; and that the written contract could not be altered except by an executed oral agreement. The court did not make written findings concerning these issues, but did orally state: ". . . that the obligation of the defendant, . . . is based upon a quasi-contractual liability of the defendant to reimburse the plaintiff for any benefits which the plaintiff may have rendered to the defendant pursuant to the terms of the contract."

And this contract: ". . . consists of the written equipment lease agreement and the executed oral agreements of the parties under which the parties agreed that the cost of repair and maintenance of the equipment would be derived from revenue in the operation of the trucking equipment. The act of the defendant in depriving plaintiff of the source of revenue has, of course, created the situation which now requires an accounting to determine whether the revenue has

been correctly represented to the defendant and whether there is or is not an indebtedness existing on the part of the defendant to the plaintiff as a result of the equipment lease agreement and the subsequently executed oral agreements which contemplated that the trucks would remain in service for the purpose of providing revenue.''

Under the agreements, considered together, defendant was not authorized to terminate the lease and repossess his equipment at his pleasure without reimbursing plaintiff for the money advanced. We see no merit to the above-mentioned claims.

Lastly, it is argued that where an agreement provides for payment from the net profits of a certain venture, no cause of action on the contract is stated without alleging realization of such profit and that recovery cannot be had without pleading and proof that funds became available to the promisor from the source he specified. (Citing such authority as *Detwiler* v. *Clune,* 77 Cal.App. 562 [247 P. 264] ; *Miles* v. *McFarlane,* 104 Cal.App. 513 [286 P. 507] ; *Martin* v. *Martin,* 5 Cal.App.2d 591 [43 P.2d 314].) The purport of these cases is that when the intent of the parties is expressed to the effect that the payment of money is to be made from a specific fund, and not otherwise, the failure of such fund will defeat the right of recovery. There appear to be exceptions to this general rule. Reasonable diligence to obtain the money by means of which the payment is to be made is implied, and failure to use reasonable diligence to obtain it may result in entitling the other party to recover, independent of the condition. (*Lynch* v. *Keystone etc. Co.,* 163 Cal. 690, 700 [126 P. 968].) This duty is reciprocal.

From the written agreement, the executed oral agreement and the statement of the trial judge, it well appears that the items that were paid for by plaintiff were to be paid from the profits, but it also appears, upon conflicting evidence, that defendant agreed to leave the equipment with plaintiff until the profits due defendant repaid the bills and advances in question. This he did not do. He personally took some of the equipment from plaintiff and allowed other equipment to be repossessed, thus preventing plaintiff from creating the fund out of which these sums were to be paid.

A person cannot take advantage of his own act or omission to escape liability. If he prevents or makes impossible the performance or happening of a condition precedent, the condition is excused. (*Pacific Venture Corpo-*

*ration* v. *Huey,* 15 Cal.2d 711, 717 [104 P.2d 641]; *Carl* v. *Eade,* 81 Cal.App. 356 [253 P. 750]; *Bewick* v. *Mecham,* 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277]; *Zogarts* v. *Smith,* 86 Cal.App.2d 165 [194 P.2d 143]; *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367 [210 P.2d 757]; *Unruh* v. *Smith,* 123 Cal.App.2d 431, 437 [267 P.2d 52].) We must assume, in support of the judgment, that the court found that the creation of the fund from which the bills were to be paid was frustrated by the acts of the defendant and accordingly the condition was excused.

We conclude that the facts, as found by the trial court and the evidence produced, justify a judgment based on the common count as pleaded, and that defendant was not prejudiced by any variance in the pleading.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 22, 1961, and appellant's petition for a hearing by the Supreme Court was denied April 19, 1961.